Rockingham,
No. 5742.

STATE

*v.*

JOHN A. THOMSON.

Argued September 4, 1968.
Decided October 31, 1968.

206

*George S. Pappagianis,* Attorney General, *Norman E. D'Amours,* Assistant Attorney General, and *Glen E. Graper,* county attorney ( *Mr. D'Amours* orally ), for the State.

*Shaines, Madrigan & McEachern* ( *Mr. Robert A. Shaines* orally ), for the defendant.

LAMPRON, J. Appeal from a conviction of being an accessory before the fact of breaking, entering and larceny in the nighttime. Prior to trial the defendant filed a motion to quash the indictment against him because of irregularities in the selection of the members of the grand jury. He also filed a motion "to quash panel" of petit jurors, from which the jury before which he was to be tried was to be chosen, because of irregularities in its selection. After a hearing before *Bownes,* J., these motions were denied and defendant's exceptions thereto reserved and transferred. The issues of law raised by the denial of these motions are the only questions before us on this appeal.

The grand jury dates back to at least 1166 ( 2 Pollock & Maitland, History of English Law, *p.* 629 ( 1895 )) and the petit jury had its beginning in the Great Charter of 1215. They represent "a deep commitment to the use of laymen in the administration of justice." Kalven & Zeisel, The American Jury, *p.* 3 ( 1966 ). "It is the jury that gives English and American trials their distinctive characteristics." Arthur T. Vanderbilt, Judges and Jurors, 36 B. U. L. Rev. 1, 51. "The jury holds in its collective hands the life, liberty and the welfare of individual defendants in criminal cases and the interest of litigants in civil

cases." Report of the Judicial Conference Committee on the Operation of the Jury System. (1960) 26 F.R.D. 409, 419. They are "given the power of decision, and are permitted to deliberate in secret and to announce their verdict without giving reasons for it." A.B.A., Standards Relating To Trial by Jury, *p.* 1 (Tent. Draft 1968). Thus, how the selection of panels of prospective jurors is made goes to the heart of getting effective juries. 36 B. U. L. Rev. 1, 68.

The establishment of the means and methods for the selection of jurors is a function of the Legislature. *State* v. *Moore,* 69 N. H. 102, 114; *Labat* v. *Bennett,* 365 F. 2d 698, 720 (5th Cir. 1966); *Brown* v. *Allen,* 344 U. S. 443, 473; *Fay* v. *New York,* 332 U. S. 261, 294. However the modes of selection must be designed to insure that the panels of grand jurors and of petit jurors are drawn impartially from a cross-section of the community. *Witherspoon* v. *Illinois,* 391 U. S. 510.

The focus of the law is on the list from which the jury is drawn and not on the composition of the particular jury or grand jury. *Pinkney* v. *United States,* 380 F. 2d 882, 887 (5th Cir. 1967). It is not required that there be a proportionate representation of all classes and religions in a particular panel as it "is doubtful if any system could be devised to accomplish this purpose." *United States* v. *Hoffa,* 349 F. 2d 20, 31 (6th Cir. 1965); *Thiel* v. *Southern P. Co.,* 328 U. S. 217, 220. In other words it is the source from which a particular jury is selected which must be representative. A.B.A., Standards Relating to Trial by Jury (Tentative Draft 1968), *p.* 51; Report of the Judicial Conference Committee on the Operation of the Jury System (1967) 42 F.R.D. 353, 369.

In December 1966, when the selectmen submitted the jury lists from which were drawn the grand jury which found the indictment against the defendant, and the panel of petit jurors from which the jury before which he was tried was selected, RSA 500:1 provided "that the name of a woman shall not be placed on said jury list unless she shall first have appeared before said selectmen and registered for jury service." This provision was repealed effective September 1, 1967. Laws 1967, 100:1. Defendant argues in his brief "that the panel was unconstitutionally drawn because women were not provided the same opportunity to serve as men."

The right of a State to permit women to serve as jurors only

if they volunteered was upheld in *Hoyt* v. *Florida,* 368 U. S. 57, 61. The court specifically noted in its decision that New Hampshire and Louisiana had similar statutes and stated: "We cannot say that it is constitutionally impermissible for a State, acting in pursuit of the general welfare, to conclude that a woman should be relieved from the civic duty of jury service unless she herself determines that such service is consistent with her own special responsibilities." *Pp.* 62, 63. See Annot. 9 A. L. R. 2d 661, 671. Consequently we hold that this factor does not constitute a valid ground for challenge of the panel of jurors which found the indictment against the defendant or from which the petit jury before whom he was tried was drawn.

RSA ch. 500 governs the selection of the panels of jurors from which grand juries and petit juries are chosen. It provides that the selectmen of each town and ward annually in December shall "make a list of such men and women as they judge best qualified to serve as jurors." RSA 44:8; RSA 500:1; RSA 600:1. These lists are to contain a maximum and minimum number of names depending on the population of the town or ward (RSA 500:2). These names written on separate pieces of paper are placed in a box kept under lock (*Id., s.* 4). When the number of names therein is reduced below the smallest required number the selectmen shall place sufficient names in the box to meet that requirement (*s.* 5). The selectmen are to be notified by the town or city clerk of the time and place for the drawing of the number of jurors directed by the court to be summoned and the selectmen shall attend at the time and place appointed (*ss.* 10-12). The jurors there chosen who actually attend the court to which they are returned shall not be again placed in the box within two years. Among the other provisions of RSA ch. 500 are criminal penalties for the misfeasance of selectmen and of town clerks in the process of the drawing of jurors, including, among others, the placing on the list "the name of a person at his own request, or on the request of any other person." *Ss.* 22, 23.

It is evident from what has been said previously in this opinion that the officials charged with this task bear a heavy responsibility in maintaining and assuring the integrity and substance of the jury system. Const., Pt. I, Articles 15th, 20th, 21st, *State* v. *Moore,* 69 N. H. 102, 115; *Fay* v. *New York,* 332 U. S. 261, 294. They alone have the duty and the oppor-

tunity, under RSA ch. 500, to ensure that the panel of jurors will consist of a selection made at random, from representative sources of persons reflecting a normal cross-section of the population involved who are capable of performing competently the responsibilities of a juror. *Brown* v. *Allen,* 344 U. S. 443, 473; *Witherspoon* v. *Illinois,* 391 U. S. 510; *People* v. *Henry,* 284 N. Y. S. 2d ( Cty. Ct. ) 726, 730.

This does not mean that jurors on a given panel must come from all towns in a county or from towns scattered over all the county for under Court direction each town will be given the opportunity to furnish its proper proportion of jurors. *State* v. *Moore,* 69 N. H. 102, 115; *State* v. *Jackson,* 77 N. H. 287, 288, 289; Const., *Pt.* I, *Art.* 17th. The paramount factor is that the jury panel must not be an arbitrarily selected group, either by design or by the failure of the officials charged with the selection to perform their statutory duties. *Thiel* v. *Southern P. Co.,* 328 U. S. 217, 220; *Rabinowitz* v. *United States,* 366 F. 2d 34, 59, 60 ( 5th Cir. 1966 ).

Defendant contends that the following failures to comply with the provisions of RSA ch. 500 constituted a fatal defect in the panel of grand and petit jurors. The city clerk of Portsmouth testified that there was a request for an additional juror from Ward 6 in that city. " I had to get in touch with the ward clerk, and it was urgent . . . there was just one name left in the jury box, and that was the name that he selected. " RSA 500:19, 24 and RSA 600:2 provide for certain summary actions which can be taken in cases of emergency. It is evident that in some such instances all of the requirements provided for the selection of jurors under ordinary circumstances cannot be followed. *United States* v. *New Jersey,* 289 F. 2d 846 ( 3rd Cir. 1961 ).

The city clerk of Portsmouth also testified as follows: " Q. So that there are instances on this present jury where names have been selected from an inadequate list presented by the ward selectmen? . . . A. Well, yes, that's true. " There was no testimony as to which or in how many of Portsmouth's six wards this was true, or how much below the required minimum number of names were in a particular box, with the exception of ward 6. RSA 500:2, 4. This witness also testified that he believed it was true that in some instances the selectmen checked with people to ask them if they wished to serve as jurors and " have continued to select these same people who indicate a will-

ingness to serve . . . in some cases." See RSA 500:22. He also testified that all the selectmen were not present when the names were drawn. RSA 500:11, 13.

Questionnaires which jurors are asked to fill out after having been chosen gave some indication that several elderly persons were on the jury panel and also one juror who had served on another jury panel one year prior to the trial of defendant's case. RSA 500:15.

As we have said previously, RSA ch. 500 is designed to assure the integrity of the jury system, and to accomplish this purpose we hold that there must be a substantial compliance with the essential provisions of this chapter. 50 C. J. S., Juries, *s.* 163 ( b ), *pp.* 889, 890. However, we fail to see and the defendant failed to prove how the irregularities in this case constituted such material departures from the statutory provisions as to prejudice his rights. *State* v. *Goyet,* 119 Vt. 167, 173; 5 Wharton's, Criminal Law and Procedure, *s.* 1961, *p.* 90 ( 1957 ). The irregularities did not constitute a systematic and intentional exclusion of any group of individuals nor did they produce a panel so unrepresentative of a cross-section of the county as to violate defendant's right under our Constitution (Const., *Pt.* I, Articles, 15th, 17th, 21st) or under the 14th Amendment of the Federal Constitution. *Brown* v. *Allen,* 344 U. S. 443, 473, 474; *Witherspoon* v. *Illinois,* 391 U. S. 510.

*Exceptions overruled.*

All concurred.