Hillsborough-northern judicial district
No. 94-288

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL MARTEL

January 31, 1997

*Jeffrey R. Howard*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, and *Joachim Barth*, assistant appellate defender, of Concord (*Mr. Barth* on the brief, and *Mr. Duggan* orally), for the defendant.

HORTON, J. The defendant, Michael Martel, was convicted of the first degree murder of his wife, Candi Martel. *See* RSA 630:1-a

(1996). He contends that the Superior Court (*Barry*, J.) erred by failing to strike his jury panel as improperly constituted. We affirm.

A special jury panel, separate and distinct from the regular monthly panel, was called for the defendant's trial. The defendant moved to strike all members of the special jury pool, arguing that the procedures used to produce the panel constituted a substantial deviation from the provisions of the jury selection statute, RSA chapter 500-A. Specifically, he asserted that some potential jurors were excused from attendance by persons without authority to excuse jurors, that other prospective jurors were excused without following the statutory guidelines and without making any record of the bases for excusal, and that the court failed to follow the required procedures after many of those receiving jury questionnaires did not return them. After an evidentiary hearing, the court denied the defendant's motion. Although the superior court found several procedural irregularities in the empaneling procedure, it determined these deviations did not result in substantial noncompliance with the statute. The defendant appeals the trial court's ruling on the motion to strike the panel.

Although the defendant makes passing reference to constitutional claims, he does not now argue that departures from the jury selection requirements resulted in a deprivation of his rights under our State and Federal Constitutions. Instead, he alleges that three separate violations of the jury selection statute together resulted in a substantial and material departure from the statutorily mandated empaneling procedure. The defendant contends his remedy for violation of the statute is a new trial.

We will uphold a trial court's findings on questions of fact unless unsupported by the record or found to be clearly erroneous. *State v. Roach*, 141 N.H. 64, 65, 677 A.2d 157, 159 (1996). "The application of the correct legal standard to those facts, however, is a question of law, which we review *de novo.*" *Id.* at 66, 677 A.2d at 159. The State conceded in oral argument that there may have been deviation from the jury selection statute with regard to jurors excused for medical reasons and those excused pursuant to a change in their reporting date. The State nevertheless argues that the statute is unclear as to who may excuse such jurors, and that substantial noncompliance did not result from these excusals because, even if proper procedures had been followed, the excusals would have been granted by a superior court judge. To dispel any confusion involving the statutory directives, we will examine each of the alleged deviations in turn to determine whether they constituted violations of the jury selection procedures prescribed in RSA chapter 500-A. We will then consider

whether deviations from the statutory procedure, taken as a whole, resulted in substantial noncompliance with the statute.

The defendant first argues that excusals made by the clerk's office without judicial approval violated the statute. The trial court found that the clerk's office excused seven potential jurors for medical reasons after they presented physician's notes. The trial court ruled that because the seven individuals excused by subordinate officers for medical reasons likely would have been excused by a justice, there was substantial compliance with the statute.

■ The procedure for jury selection in State courts is set forth in RSA chapter 500-A. *See State v. Thomson,* 109 N.H. 205, 208, 247 A.2d 179, 181 (1968) (applying prior law), *cert. denied,* 394 U.S. 903 (1969). "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meaning to the words used." *State v. Bernard,* 141 N.H. 230, 233, 680 A.2d 609, 610 (1996) (quotation omitted). RSA 500-A:11 provides that

> [a] person who is not disqualified for jury service may be excused from jury service *by the court* only upon a showing of undue hardship, extreme inconvenience, public necessity or for any other cause that *the court* deems appropriate. The person may be excused for the time deemed necessary *by the court* and shall report again for jury service, as directed *by the court.*

RSA 500-A:11 (1983) (emphasis added). RSA chapter 500-A separately defines "clerk" and "court." RSA 500-A:1 (Supp. 1996). In other provisions of the chapter, "the court" connotes a judge of the superior or regional jury trial (district) court rather than an officer of the court. *See* RSA 500-A:12, :13 (1983 & Supp. 1996). RSA 500-A:7 (1983) refers to "Questioning by the Clerk or Court," which would be repetitive if "court" included the clerk and his deputies. It is apparent from the language of the statute that the legislature intended requests for excusals due to medical reasons be evaluated and granted by a justice of the superior or regional jury trial court rather than by the clerk or subordinate jury officers. *See* RSA 500-A:9, :11. We conclude that excusal of seven jurors for medical reasons without obtaining judicial approval was a violation of RSA 500-A:11.

The defendant next argues that of the jurors summoned, the jury clerk's excusal of individuals based on telephone requests and notes written on their jury questionnaires violated chapter 500-A. The trial court found evidence that seventeen of these excusals may have

been improperly granted by the jury clerk. At the evidentiary hearing, the jury clerk testified that due to a change in trial dates she was directed by the clerk of court to reschedule prospective jurors if the new reporting date posed an inconvenience. The jury clerk then excused jurors in her discretion. Reasons for the telephone excusals were not documented, but the trial court found they were based primarily on the inconvenience posed by a change in the reporting date. The superior court noted that the absence of a record was problematic, but once again did not find that these dismissals constituted a substantial departure from the requirements of chapter 500-A.

■ We agree that the absence of any record of the bases for excusing these jurors is troubling. In other jury selection contexts, we have stressed the need for a record to permit appellate review and ensure a fair and impartial jury. *See State v. Brodowski*, 135 N.H. 197, 201, 600 A.2d 925, 927 (1991); *State v. Castle*, 128 N.H. 649, 652, 517 A.2d 848, 850 (1986). In the instant case, there was testimony that these jurors were excused based on the clerk of court's directive, and the trial court found their reporting dates were amended for inconvenience. "Undue hardship" and "extreme inconvenience" are valid reasons for excusal from jury service. RSA 500-A:11. As previously noted, however, such excusals must be granted by the court, and not by a jury clerk. *Id.* According to the statute, the court shall determine the time for which a prospective juror may be excused and an appropriate alternate reporting date. *Id.* We therefore conclude that dismissal of these potential jurors by the jury officer without judicial approval also violated RSA 500-A:11.

Finally, the defendant argues that, after a larger group of prospective jurors failed to respond to jury questionnaires, the clerk's office erred by making no effort to contact the missing jurors. The defendant relies upon RSA 500-A:7, I, which mandates that the clerk must direct prospective jurors who do not return completed qualification forms as instructed to appear at the court to fill out the form. RSA 500-A:7, I. The trial court found the clerk's office failed to follow up on fifty-nine jurors who did not return their jury questionnaires and that procedures developed to pursue these potential jurors were not followed. Although there is no explicit finding in its opinion on this point, the trial court implicitly found that the statute was violated, but that the violation was not a substantial departure from the statutory mandate.

■ The statute requires the clerk to direct prospective jurors who have not returned their questionnaires to appear at the court to

complete the forms. RSA 500-A:7, I. The penalty provisions of RSA 500-A:20 for potential jurors who neglect to return jury questionnaires as required by RSA 500-A:7, I, *see* RSA 500-A:20, I (1983 & Supp. 1996), support the interpretation that the statutory language is mandatory and not merely directive. Because the clerk did not institute proceedings to pursue prospective jurors who failed to return their jury questionnaires, we agree with the trial court that chapter 500-A was violated.

On review of the record, we determine that eighty-three of 402 prospective jurors were dismissed prior to their reporting date or were not pursued in violation of the jury selection statute. We now examine whether these deviations constituted substantial noncompliance with RSA chapter 500-A.

■ The legislative policy underlying the statute is that "all persons selected for jury service should be selected at random from a fair cross section of the population of the area served by the court." Laws 1981, 527:1 (legislative findings and declaration of policy). To accomplish this purpose substantial compliance with the essential provisions of RSA chapter 500-A is required. *Thomson*, 109 N.H. at 210, 247 A.2d at 182. The burden of making a *prima facie* case for substantial noncompliance is on the defendant. *See id.*; 47 AM. JUR. 2D *Jury* § 156 (1995); 50 C.J.S. *Juries* § 175(a) (1947). In most cases the defendant must show the irregularities "constituted such material departures from the statutory provisions *as to prejudice his rights*." *Thomson*, 109 N.H. at 210, 247 A.2d at 182 (emphasis added).

Statutory noncompliance generally rises to a substantial level and prejudice to the defendant occurs when the purposes of the statute — random selection of jurors from a fair cross section of the community — are contravened. *See id.* The superior court, in denying the defendant's motion, specifically found the jury pool from which the defendant's panel was chosen represented a fair cross section of the community. The defendant does not challenge this finding nor allege any violation of the randomness requirement. Finally, unlike its sanctions for recalcitrant potential jurors, RSA chapter 500-A sets forth no remedy for defendants whose jury pools are affected by statutory violations. When a statute does not provide a remedy for a violation of its provisions, and there has been no constitutional violation, the courts should fashion a remedy if the defendant can show prejudice. *See State v. Reynolds*, 131 N.H. 291, 295, 556 A.2d 298, 300 (1988). Because the defendant has demonstrated no prejudice, no relief is appropriate in this case.

The defendant argues that in *State v. Dushame*, 136 N.H. 309, 314-15, 616 A.2d 469, 472 (1992), this court granted a new trial based

on a violation of RSA 500-A:13 without requiring a showing of prejudice to the defendant. In *Dushame*, we held that although in other contexts "relief is not afforded a criminal defendant based on a statutory violation absent a showing of prejudice," *id.* at 315, 616 A.2d at 472, "the trial court's decision to substitute an alternate juror for the disqualified foreperson constituted a clear statutory violation," *id.* at 314, 616 A.2d at 472, which "touche[d] upon the integrity of the deliberative process of the jury," *id.* at 315, 616 A.2d at 472, and was "in direct violation of our State constitutional mandate," *id.* In *Dushame*, the initial random selection and fair cross-section requirements of the statute were not affected by the substitution of an alternate juror, but we granted a new trial because the statutory violation denied the defendant his constitutional right to a unanimous verdict of a jury of twelve persons. *Id.*; N.H. CONST. pt. I, art. 15. The violations in the present case, however, offended neither the underlying purposes of the statute nor the defendant's rights to due process or an impartial jury under our State Constitution. *See* N.H. CONST. pt. I, art. 15; Laws 1981, 527:1. Without a showing of prejudice, the defendant's purely statutory argument must fail.

> In coming to our decision today we reiterate that the officials charged with [the task of executing the statute] bear a heavy responsibility in maintaining and assuring the integrity and substance of the jury system. They alone have the duty and the opportunity, under RSA [chapter 500-A], to ensure that the panel of jurors will consist of a selection made at random, from representative sources of persons reflecting a normal cross-section of the population involved
> . . . .

*Thomson*, 109 N.H. at 208-09, 247 A.2d at 181 (applying prior law) (citations omitted). Without strict adherence to the legislatively prescribed jury selection procedures, the purposes of the statute and a defendant's rights under our State and Federal Constitutions could be violated. In the present case, despite deviations from the prescribed jury selection procedures, the defendant nonetheless was afforded a randomly selected pool of prospective jurors from a fair cross-section of the community. Because the violations of RSA chapter 500-A did not result in substantial noncompliance with the statute, a new trial for the defendant is not warranted. *See id.* at 210, 247 A.2d at 182.

*Affirmed.*

All concurred.