**STATE of Iowa, Appellee,**

v.

**Albert Edwin CHIDESTER, Jr., Appellant.**

No. 96–1086.

Supreme Court of Iowa.

Oct. 22, 1997.

Linda Del Gallo, State Appellate Defender, and John M. Priester and Dennis D. Hendrickson, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Jeffrey Harris, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Albert E. Chidester, Jr., was convicted and sentenced for first-degree murder and attempted murder. *See* Iowa Code §§ 707.2, .11 (1995). He appeals, claiming error in the trial court's denial of his pretrial motion to quash the jury panel. Finding no constitutional or statutory infirmity in the jury panel selection procedures, we affirm.

## I. *Background Facts and Proceedings.*

Chidester was charged with first-degree murder and attempted murder for the shooting of two Target employees in Waterloo, Iowa. He filed a pretrial motion to quash the jury panel on the basis that (1) the court attendant's exclusion of potential venire members violated his right to a jury panel composed of a cross section of the community as guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 9 of the Iowa Constitution, and (2) the jury-selection procedures violated Iowa Code section 607A.6. The district court denied Chidester's motion, and jury trial commenced in Webster County after a change of venue from Black Hawk County. The jury returned a guilty verdict on both charges, and the court sentenced Chidester to life imprisonment on the murder conviction and an indeterminate fifty-year term on the attempted murder conviction.

Chidester now brings this appeal, seeking a new trial on the basis the venire was illegally drawn. He continues to rely on his rights under the Sixth Amendment and article 1, section 9 of the Iowa Constitution, as well as the statutory procedures outlined in Iowa Code section 607A.6. We review his constitutional claims de novo; the alleged statutory violation is reviewed for correction of errors at law. *State v. Morgan,* 559 N.W.2d 603, 609 (Iowa 1997).

## II. *Webster County's Jury Selection Procedures.*

The court held an evidentiary hearing on Chidester's motion to quash the jury panel. The testimony and exhibits introduced at that hearing revealed the following procedures used in Webster County for the selection of the venire.

The Webster County court attendant testified she compiles the list of potential jurors. She explained that several years ago a district court judge from Webster County authorized her to "use [her] own judgment" in excusing jurors. It appears no specific guidelines for deciding who should be excused were given to her by the judge. She was told, however, to consult with a judge if she had any questions.

Under this procedure, the court attendant has decided whether a potential juror should be excused. The court attendant has routinely deferred jury service to a later quarter for individuals who have had doctor appointments, vacations, and business trips that conflicted with the term for which they were summoned. Similarly, if a farmer has been called for jury duty during planting or harvesting season, the court attendant has transferred the farmer to another quarter.

The attendant has routinely released from jury duty persons who would not be paid by their employer for the time they serve on a jury. She has also excused jurors for health reasons.

If a potential juror has disagreed with the court attendant's decision, the attendant has asked the juror to speak with a judge. Otherwise, the court attendant's decisions have not been reviewed by a judicial officer. None of the twenty-six excuses accepted by the court attendant in drawing the venire for Chidester's trial were presented to a judge for review or approval.

III. *Constitutional Claims.*

■ A. *General legal principles.* Chidester argues the procedure used to select the jury panel violated his Sixth Amendment right "to a jury panel designed to represent a fair cross section of the community."[1] *See State v. Watkins,* 463 N.W.2d 411, 414 (Iowa 1990) (citing *Holland v. Illinois,* 493 U.S. 474, 476–77, 110 S.Ct. 803, 805–06, 107 L.Ed.2d 905, 914 (1990)). He specifically criticizes two categories of excuses granted by the court attendant: (1) the transfer of farmers to another quarter; and (2) the exemption from jury duty given to persons whose employers will not pay them while they serve as jurors.

■ "A defendant challenging the composition of a jury panel must first establish a prima facie violation of the sixth amendment's fair cross-section requirement." *Id.* To establish a prima facie violation, the defendant

must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in rela-

tion to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87 (1979). Once a defendant establishes a prima facie case, the burden shifts to the State to justify the disproportionate representation by demonstrating that attainment of a fair cross section is incompatible with a significant state interest. *Id.* at 368, 99 S.Ct. at 670–71, 58 L.Ed.2d at 589–90.

■ The United States Supreme Court has not defined the term "distinctive group." *Lockhart v. McCree,* 476 U.S. 162, 174, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137, 148 (1986). Rather, the Court considers the distinctiveness of a particular group in reference to the three purposes of the fair-cross-section requirement: (1) ensuring the composition of juries is not arbitrarily skewed so as to deprive a defendant of the "commonsense judgment of the community"; (2) maintaining the public's confidence in the fairness of our jury system; and (3) giving effect to our conviction that "sharing in the administration of justice is a phase of civic responsibility." *Id.* at 174–75, 106 S.Ct. at 1765–66, 90 L.Ed.2d at 148–49 (quoting *Taylor v. Louisiana,* 419 U.S. 522, 534, 95 S.Ct. 692, 700, 42 L.Ed.2d 690, 700 (1975). The Court observed in *Lockhart* that in cases where a Sixth Amendment violation has occurred, the groups in question—blacks, women and Mexican-Americans—were excluded "on the basis of some immutable characteristic such as race, gender, or ethnic background," rather than on the basis of their inability to serve as jurors. *Id.* at 175, 106 S.Ct. at 1766, 90 L.Ed.2d at 149. Consequently, in these instances, there was "the possibility that the

---

1. Chidester claims Webster County's jury-selection procedure also violates article 1, section 9 of the Iowa Constitution. The right to a jury representative of the community is guaranteed, however, by article 1, section *10* of the Iowa Constitution. *See State v. Knutson,* 220 N.W.2d 575, 577 (Iowa 1974) (resting defendant's right to a representative jury on article 1, section 10's guarantee of "an impartial jury"). Notwithstanding Chidester's reliance on the wrong section of the Iowa Constitution, he has relinquished no claim of error because the protection granted by the Iowa Constitution with respect to the composition and selection of the jury panel is coextensive with that of the Sixth Amendment. *See State v. Veal,* 564 N.W.2d 797, 806 (Iowa 1997) (applying same test in considering claim made under Sixth Amendment and under article 1, section 9 of the Iowa Constitution); *State v. Jones,* 490 N.W.2d 787, 791–94 (Iowa 1992) (applying same test in analyzing claim under Sixth Amendment and article 1, section 10 of the Iowa Constitution). Therefore, we limit our discussion to the Sixth Amendment.

composition of juries would be arbitrarily skewed in such a way as to deny criminal defendants the benefit of the common-sense judgment of the community"; their exclusion gave rise to an "appearance of unfairness"; and citizens in these groups were forever denied their right to serve on juries in criminal cases. *Id.*

We turn now to the specific challenges to the jury's composition made by Chidester.

■ B. *Exclusion of persons whose employers will not compensate them during jury service.* We conclude these potential jurors do not qualify as a distinctive group for purposes of the Sixth Amendment. First, these individuals were not excluded due to an "immutable characteristic." The next time these persons are called for jury duty, they may have a different job and be able to serve. These potential jurors were excluded for economic reasons that arguably affect their ability to serve. We have found no constitutional violation under similar circumstances.

In *State v. Hobson*, 284 N.W.2d 239 (Iowa 1979), we considered a defendant's challenge to a venire from which six persons were excused because of "employment hardship." 284 N.W.2d at 241. Although we stated "persons should not be excused from their public responsibility of jury service for mere inconvenience, distaste for service, or even the threat of some loss of income," we concluded the defendant had failed to show the systematic exclusion of an identifiable group. *Id.* at 241–42.

We also think the underlying purposes of the fair-cross-section requirement are not undermined by the exclusion of these individuals. The record shows the persons excused because their employers would not compensate them while they served as jurors are a diverse group.[2] We cannot conclude that these individuals had similar ideas, attitudes, or experiences such that a defendant would be denied the benefit of this group's peculiar common sense if they were excluded from the venire. *See Anaya v. Hansen*, 781 F.2d 1, 5 (1st Cir.1986) (finding "blue collar work-

ers" were not a distinctive group because there was a "lack of coherence" within this group); *State v. Boyd*, 867 S.W.2d 330, 335 (Tenn.Crim.App.1992) (rejecting Sixth Amendment challenge to selection system that excluded nonvoters because this group did not "have a cohesiveness of attitudes, ideas, or experiences which may not be represented by others in the community"); *State v. Young*, 853 P.2d 327, 339 (Utah 1993) (rejecting assertion that geographic distribution or socio-economic status is a distinctive classification because these people did not have "the common values, culture, and history such as to create a distinctive group within our society"). We also think the exclusion of this diverse group of people does not give rise to an appearance of unfairness. Finally, as we noted above, these individuals are not necessarily forever precluded from jury duty.

C. *Farmers.* The question whether farmers are a distinctive group is not as easily answered. Some courts have upheld the exemption from jury duty of occupational groups on the basis such groups have not been shown to share unique attitudes, ideas, or experiences, and therefore, do not constitute a "distinctive group." *E.g., State v. Puente*, 69 Ohio St.2d 136, 431 N.E.2d 987, 989 (1982) (considering exemption of doctors, dentists, and lawyers from jury service); *Boyd*, 867 S.W.2d at 336 (considering systematic exclusion of doctors, lawyers, and the clergy); *cf. Commonwealth v. Matthews*, 406 Mass. 380, 548 N.E.2d 843, 848 (1990) (considering exclusion of "suburban parents" and "caretakers of adolescent children"). Other courts have skipped the distinctive-group analysis and have simply held the government had a legitimate reason to exclude the occupational group under consideration. *E.g., United States v. Terry*, 60 F.3d 1541, 1544 (11th Cir.1995) (holding routine exclusion of members of fire and police departments did not violate the fair-cross-section requirement "because it is good for the community that [these workers] not be interrupted in their work"), *cert. denied,* —— U.S.

---

2. It is difficult to determine from the record the occupations of all the persons excluded because their employers would not pay them while they served on a jury. It appears, however, that this group included a travel agent, a shelf stocker at a grocery store, a funeral director, a farm laborer, and an assistant grocery store manager.

——, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996); *State v. Williams,* 659 S.W.2d 778, 781 (Mo. 1983) (en banc) (upholding statutory exemption of lawyers from jury duty for policy reasons).

This court has previously followed the latter approach in considering a statutory exemption from jury duty of all "[a]cting professors and teachers." *State v. Williams,* 264 N.W.2d 779, 781 (Iowa 1978). We found no constitutional infirmity in the statute, noting a state has the authority "to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community." *Id.* at 782 (quoting *Taylor,* 419 U.S. at 534, 95 S.Ct. at 700, 42 L.Ed.2d at 700).

▇ We find it unnecessary here, as well, to decide whether farmers are a distinctive group for Sixth Amendment purposes. We think the unique requirements of their occupation justify the limited exemption from jury service allowed by the Webster County court attendant. A farmer's livelihood depends upon timing. There is a narrow window of opportunity to plant crops under the right conditions and harvest them at the right time. Wet weather can arrive at any time and frustrate all attempts to plant those final acres or harvest the last few fields. Consequently, even one day lost to jury duty may mean a setback of several days or even weeks in accomplishing these tasks. Under these unique circumstances, we find ample basis for finding a special hardship to farmers in serving on a jury during planting or harvesting season. Accordingly, their exclusion from jury service during these periods is justified and does not violate the fair-cross-section requirement of the Sixth Amendment.

IV. *Statutory Claim.*

▇ Chidester claims the venire was illegally drawn because the procedure used in Webster County was contrary to Iowa Code section 607A.6, which provides, in part, that "[t]he *court* may defer a term of grand or petit juror service upon a finding of hardship, inconvenience, or public necessity." (Em-

phasis added.) Section 607A.3(2) defines the word "court" to mean "the district court of this state and includes, when the context requires, a judicial officer as defined in section 602.1101." Section 602.1101(8) defines a judicial officer as "a supreme court justice, a judge of the court of appeals, a district judge, a district associate judge, or a magistrate." A court attendant is not a judicial officer and, accordingly, is not included in chapter 607A's definition of "court." Therefore, the State did not comply with the requirements of section 607A.6 in selecting a jury panel for Chidester's trial. *See People v. Langdon,* 54 Cal.App.3d 384, 126 Cal.Rptr. 575, 578–79 (1976) (holding statute empowering judge to excuse potential jurors was violated by board of supervisor's action in exempting persons residing in a certain geographical area of district from serving on jury trial held in another part of district); *State v. Martel,* 141 N.H. 599, 689 A.2d 1327, 1328 (1997) (holding statute, allowing "court" to excuse jurors from jury duty and defining "court" as a judge, was violated when clerk excused jurors "without obtaining court approval [of the excuses granted]"); *State v. Coble,* 100 Wis.2d 179, 301 N.W.2d 221, 234 (1981) (holding statute stating that "judge" could excuse jurors was violated when jury commissioners excused jurors); *cf. Young,* 853 P.2d at 340 (holding statute requiring court to decide issues of disqualification of jurors was not violated where court delegated "initial qualification function to a trained court clerk" and allowed the clerk to grant *postponements* to prospective jurors with difficulty or hardships, but reserved for itself the responsibility of "reviewing those forms requiring a discretionary determination").

▇ Finding a violation of section 607A.6 does not end our discussion, however. A successful challenge to the process for selecting a jury panel "can be founded only on a *material* departure from the statutory requirements for drawing or returning the jury." Iowa R.Crim. P. 17(3) (emphasis added). Obviously, the legislature did not intend that any deviation from the statute would justify setting aside a conviction. In determining what the legislature did intend, we look to the common meaning of the words

used. *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997).

■ Relying on the common meaning of the words used in rule 17(3), we hold a "material departure" is one of "real importance or great consequence." *See Webster's Third New International Dictionary* 1392 (unabr. ed.1993) (defining "material" as "being of real importance or great consequence: substantial"). We think a departure from statutory requirements is of real importance or of great consequence only when the defendant's rights have been prejudiced. *See Langdon,* 126 Cal.Rptr. at 579 (requiring a showing of prejudice resulting from improper jury-selection procedures in order to obtain reversal of criminal conviction); *Coble,* 301 N.W.2d at 236 (stating that in assessing jury challenges, "irregularities in the process are immaterial unless it appears probable that there has been prejudice").

Common sense dictates that any prejudice must relate to the interests which the statutory requirement seeks to protect. *See Martel,* 689 A.2d at 1329–30 (holding "[s]tatutory noncompliance generally rises to a substantial level and prejudice to the defendant occurs when the purposes of the statute ... are contravened"). Therefore, we now turn to (1) an examination of the purpose of our jury-selection statute and the rights it protects, and (2) a determination whether that purpose has been accomplished and those rights protected despite the State's failure to comply with section 607A.6.

The purpose of our jury-selection statute is found in its declaration of policy:

It is the policy of this state that all persons be selected at random from a fair cross section of the population of the area served by the court, and that a person shall have both the opportunity in accordance with the provisions of law to be considered for jury service in this state and the obligation to serve as a juror when selected.

**3.** Although the parties have focused their briefs on whether the jury-selection procedures are directory or mandatory and whether the state substantially complied with those procedures, we find it unnecessary to address these issues. Iowa

Iowa Code § 607A.1. This statement mirrors the fair-cross-section requirement of the Sixth Amendment and the purposes underlying that requirement. *See State v. Lohr,* 266 N.W.2d 1, 5 (Iowa 1978) (noting Iowa's statutes governing jury-selection procedures seek to discharge the constitutional requirements that the jury be drawn from a fair cross section of the community and that no identifiable group be systematically excluded). Consequently, any departure from statutory requirements that does not frustrate the goal of attaining a fair cross section of the community is not material. *See Langdon,* 126 Cal.Rptr. at 579 (holding "a material departure" from statute governing jury selection is one that "affect[s] the substantial rights of a defendant in securing an impartial jury").

■ We have previously held that the fair-cross-section requirement of the Sixth Amendment was not violated by the jury-selection procedures used in this case. Therefore, the purposes of section 607A.6 were accomplished despite the fact the judge delegated to the court attendant the judge's statutory responsibility to excuse potential jurors. *See Coble,* 301 N.W.2d at 237 (concluding that procedure allowing jury commissioners to excuse potential jurors, rather than judge as required by statute, did not frustrate legislative goals). For this reason, Chidester is unable to show that he has been prejudiced and therefore, the State's violation of section 607A.6 was not material as required by rule 17(3). *See State v. Clift,* 202 Kan. 512, 449 P.2d 1006, 1008 (1969) (refusing to reverse defendant's conviction where he showed no prejudice from fact that bailiff excused potential jurors rather than the judge, as required by statute); *Martel,* 689 A.2d at 1330 (holding statutory challenge to jury-selection procedure failed in absence of showing of prejudice).

The trial court did not err in denying Chidester's motion to quash the jury panel. Thus, we affirm Chidester's convictions.[3]

Rule of Criminal Procedure 17(3) explicitly limits the challenges that may serve as a basis to discharge the jury panel to *material* deviations from statutory requirements. Because we conclude the violation of the statute here was not a materi-

### V. *Conclusion.*

 Jury service is the civic responsibility and privilege of all eligible citizens, not just those who have nothing better to do. Many of the jurors excused by the court attendant here for personal or financial hardship reasons never appeared before the court attendant or a judge to justify their requested exemption from jury service. Moreover, it is apparent that many jurors misunderstood the nature of the requested service and thought the notice stating they were on jury duty for three months meant that they would literally serve for three months. It is not surprising that under these circumstances these potential jurors honestly believed such a commitment would result in financial ruin. The realities of jury duty and the importance of jury service should have been explained to these individuals before a summary dismissal from the venire was allowed. With one minor exception, the court attendant here accepted at face value each written assertion of hardship without any further inquiry. As Chidester points out, this procedure hardly complies with the statutory requirement that "the court shall exercise this authority [to excuse jurors] strictly." *See* Iowa Code § 607A.6.

In conclusion, our affirmance should not be understood as an endorsement of the practice we have described. We think the challenged procedure is subject to just criticism because of its wholesale transfer of what should be a judicial responsibility to a court employee. Criticism seems especially appropriate here because the transfer of responsibility was without careful guidelines and did not provide for subsequent review by a judge. Nevertheless, the defendant was not prejudiced by the statutory violations that occurred and therefore, we must affirm his convictions.

**AFFIRMED.**

al departure from the statutory requirements, in that it did not have a significant impact on the selection of an impartial jury, Chidester's motion

to quash was properly overruled. Therefore, the other issues raised by the parties are inconsequential.