**IN THE COURT OF APPEALS OF IOWA**

No. 17-0431
Filed April 4, 2018

**TROY A. WILLIAMS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Paul L. Macek, Judge.

The applicant appeals the denial of his application for postconviction relief.

**REVERSED AND REMANDED.**

Eric D. Tindal of Keegan and Farnsworth, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, and Jeffrey A. Critchlow, Student Legal Intern, for appellee.

Heard by Potterfield, P.J., and Mullins and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Troy Williams appeals the denial of his application for postconviction relief (PCR). Williams maintains his PCR counsel committed structural error and asks that we remand for a new trial of his PCR application.[1]

Though Williams's right to effective assistance of counsel in a PCR action is statutory, not constitutional, we review his claim de novo. *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011) (citing *Dunbar v. State*, 515 N.W.2d 12, 14–15 (Iowa 1994)); *see also* Iowa Code § 822.5 (2015).

Generally, when an applicant claims counsel provided ineffective assistance, the applicant has the burden to establish (1) his counsel failed to perform an essential duty and (2) this failure resulted in prejudice. *Lado*, 804 N.W.2d at 251. However, when a claimant maintains counsel committed "structural errors," "'[n]o specific showing of prejudice [is] required' as the criminal adversary process itself is 'presumptively unreliable.'" *Id.* at 252 (alterations in original) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). "Structural errors are not merely errors in a legal proceeding, but errors 'affecting the framework within which the trial proceeds.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). When a structural error occurs, "the underlying criminal proceeding is so unreliable the constitutional or statutory right to counsel entitles the defendant to a new proceeding without the need to show the error actually caused prejudice." *Id.*

---

[1] Williams was originally convicted of conspiracy to commit a nonforcible felony. He filed a direct appeal, and a panel of our court affirmed his conviction in *State v. Williams*, No. 13-0801, 2014 WL 2600276, at *4 (Iowa Ct. App. June 11, 2012).

Our supreme court has recognized three categories of structural error, where:

> (1) counsel is completely denied, actually or constructively, at a crucial stage of the proceeding; (2) where counsel does not place the prosecution's case against meaningful adversarial testing; or (3) where surrounding circumstances justify a presumption of ineffectiveness, such as where counsel has an actual conflict of interest in jointly representing multiple defendants.

*Id.* Courts have found structural error where counsel allowed the claimant's PCR application to be dismissed or where counsel failed to file an appeal altogether. *See, e.g.*, *Lado*, 804 N.W.2d at 253; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). Such conclusions make sense, as "no presumption of reliability can be accorded to judicial proceedings that never took place." *Dockery v. State*, No. 13-2067, 2016 WL 351251, at *4 (Iowa Ct. App. Jan. 27, 2016) (citing *Roe*, 528 U.S. at 484).

Those are not the facts presently before us. Here PCR counsel—who was appointed almost a year after Williams filed his pro se application for PCR—filed a motion entitled, "motion for trial setting conference and relief from rule 1.944" almost immediately upon being appointed. The motion was granted, a trial scheduling conference was set, and Williams's PCR application avoided a rule 1.944 dismissal for want of prosecution.

After the successful February 2016 motion, PCR counsel faltered in his duty to the court and his client. By the time of the PCR hearing almost a year later, PCR counsel had not investigated or prepared the issues raised by Williams in his pro se application for relief. PCR counsel failed to prepare or present his client's claims in any meaningful adversarial context. In his pro se PCR application,

Williams raised more than thirty issues, almost all alleging deficient conduct of the trial by his trial attorney.

Williams had been convicted by a jury of conspiracy to commit a theft. He was represented at trial by an attorney he had retained shortly before the trial date. The charge involved Williams's entering into a conspiracy with others, who later carried out the crime without Williams's participation. The evidence of conspiracy largely depended upon the testimony of one witness.

At the PCR hearing in January 2017, PCR counsel called the trial attorney as a witness, an action relied upon by the State to defeat Williams's claim of structural error on appeal. However, PCR counsel was less than a zealous advocate in his examination of trial counsel. His leading questions provided trial counsel with an excuse for her lack of trial preparation. For example, when asking trial counsel why she did not take any depositions before Williams's trial, the following exchange took place:

> A. I really don't like those, because it ruins the opportunity at trial to get truthful testimony from third parties.
>     Q. Plus you might show your hand to the County Attorney?
> A. Yes. I am against them unless I think it's going to actually dispose of the case.
>     Q. And you might have been so close to trial that you probably could [sic] take depos, I guess?

Williams's PCR attorney continued to question trial counsel in such a way as to defeat Williams's PCR claims. One of Williams's claims involved the allegation that the State's main witness who tied him to the conspiracy to commit a theft had mental-health problems that would weaken her testimony as well as pending criminal charges that might give her a motive to lie. Trial counsel failed to exploit

these potential impeachment issues. When asking trial counsel why she did not do more to discredit the State's witness, the following exchange occurred:

A. Okay. I don't remember all about [the process of obtaining medical records of a witness] at all. And I think your question is whether or not I advised my client about it or pursued it, and the answer is no.

Q. And would that be a breach of the standard of care for lawyers at the time you tried this case? A. I don't think so. I'm not sure. I think many of the decisions are left up to the attorney, and the defendant only gets to make certain decisions in his case. I don't think it's one of the mandatory decisions that clients get to make.

Q. And that's true, the Courts have said that counsel may not breach a standard of care or may not have caused prejudice in certain instances if they make strategic decisions. A. Yes, that's my understanding.

Q. Do you think this thing about [the State's witness], as far as not looking into her psychiatric or psychological background, was a strategic decision by you as a trial counsel? A. Yes, I do—yes, I do.

Q. And can you explain that for his Honor, please. A. She had enough issues that I didn't have a reason to go after her, you know, her psyche. I already felt comfortable proceeding with her with the things I already knew about her.

Q. And if you beat her up in front of the jury, it might backfire on you? A. Yeah, that's true. You have to be gentle and you can't let the jury hate you because you're looking like I'm victimizing someone on the stand.

After trial counsel was excused, Williams testified by way of phone. During Williams's testimony, PCR counsel seemed to be reading from a list of errors Williams wanted to raise as to whether trial counsel was ineffective. PCR counsel would introduce an alleged error then have Williams talk about the issue for a while. After Williams attempted to explain the issue and how he believed it related to his case, PCR counsel would ask, "And you don't think [your trial attorney] handled that properly?" before moving on to the next topic. No other witnesses were called.

At the close of testimony, PCR counsel indicated, "We are content to submit the matter on the record made and all the filings made in this case." The court replied:

> Well, probably from your perspective regrettably, the Court isn't satisfied with that. On each one of these allegations that Mr. Williams has made, please submit—well, not please—submit a written argument as to what was ineffective in respect to these assertions, and if the evidence in respect to these assertions, and if the evidence or assertions had been allowed, what—the prejudice resulted.

PCR counsel then filed a "response to court order 34 pro se trial issues." In the brief, counsel failed to argue how any of the alleged failures raised by Williams prejudiced him. Instead, counsel wrote the legal standard for determining prejudice and then repeatedly informed the court to "see authority issue 1."

The court addressed each of Williams's claims but, without evidence or effective argument, was unable to say more than that there was no evidence presented in support and that Williams's statements were insufficient to show prejudice. Indeed, the State's brief on appeal resorts to the same formula—a statement of the claim followed by a statement that there is nothing in the record and therefore no reason to think the outcome would be different.

We recognize that "[a]n attorney . . . may not ethically urge grounds that are lacking in legal or factual support simply because his client urges him to do so." *Gamble v. State*, 723 N.W.2d 443, 446 (Iowa 2006); *see* Iowa R. Civ. P. 1.413(1). "On the other hand, neither should defense counsel be expected to criticize or diminish their own client's case." *Gamble*, 723 N.W.2d at 446. And here, counsel apparently did not investigate or even inquire about a number of Williams's claims. Under one issue, PCR counsel's brief purportedly supporting Williams's claims

states, "I really have no clue whatsoever what Troy was talking about or how any of that was relevant or material to his criminal trial or this postconviction case." Under another, as his "argument" for the prejudice Williams suffered due to trial counsel's alleged failure to impeach the State's witness, PCR counsel actually makes the State's argument, stating, "Putting [the State's witness] and the prosecutor on trial could have seriously backfired and make the jury want to retaliate." Only the State's attorney should criticize or diminish the applicant's claims. *See id.*

Insofar as a number of Williams's thirty-four claims lacked legal or factual support, PCR counsel should have allowed Williams to represent himself on those issues. *See id.* ("A pro se applicant has no ethical prohibitions against filing claims that a court might find to be without merit and may, under our postconviction statute, demand full consideration of all claims raised—those raised pro se as well as those raised by counsel."). PCR counsel's decision to, instead, assess the validity of his client's claims is reversible error. *Id.* ("Postconviction counsel shall not be required to assess the validity of [the applicant's] claims.").

While PCR counsel should never argue against his client's claims, we are even more disturbed by counsel's arguments against a possibly successful claim. One of Williams's claims in his application for PCR was that his trial counsel should have objected that his jury pool failed to constitute a fair and reasonable cross-section of the community.[2] *See* U.S. Const. amend. VI.; Iowa Const. art. 1, § 10;

---

[2] Our review of the trial transcript reveals that trial counsel did make an objection to the trial court and stated on the record, "The group that has been sworn in is not representative of the population. It's my understanding the minority population in this area is about 15 to 20 percent minority. There's not anyone who appears to be Afro-American in that group."

*see also* Iowa Code § 607A.1. In order to establish a violation of a defendant's Sixth Amendment right to a fair cross-section of the community, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*See State v. Chidester*, 570 N.W.2d 78, 84 (Iowa 1997) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

In PCR counsel's brief on the issue, PCR counsel makes a number of incorrect, misleading statements. First, he claims, "There is a proper procedure to challenge a jury panel that was not used therefore is waived." Next, he states, "Counsel did not employ the proper procedure to challenge the panel or even make a record and discussions were only in chambers." Our review of the underlying trial transcripts reveals trial counsel did make an objection regarding the composition of the jury pool, which the district court overruled. While it occurred in chambers, the proceedings were captured by the court reporter. PCR counsel continues, stating Williams's claim is "impossible to prove and speculation and conjecture." Williams's testimony at his PCR hearing established there were no black potential jurors in the jury pool.[3] If PCR counsel had read the trial transcript, he would have known trial counsel made an objection in the original trial and that

---

[3] In ruling on this claim, the PCR court stated, "[Williams] asserts that trial counsel should have challenged the entire panel in part because of its racial makeup. There is no evidence adduced as to the racial makeup of the panel in the trial of this matter and the court can discern no prejudice in this regard."

there was further evidence to support Williams's claim. Furthermore, as our supreme court recently noted in *State v. Plain*, 898 N.W.2d 801, 827 (Iowa 2017), our district courts are required to "preserve all records and lists compiled and maintained in connection with the identification and service of jurors for four years." *See* Iowa Code § 607A.26. A defendant attempting to prove a fair-cross-section claim is entitled to access the information of the jury pool. *Plain*, 898 N.W.2d at 828. The rest of the prima facie case requires information about the population in the community where the trial took place and how the jury pool is created. *See id.* Nothing about these requirements make Williams's claim "impossible to prove," and if counsel had sought out such information, Williams's claim would no longer be based on "speculation and conjecture."

While PCR counsel has an ethical duty not to make baseless claims, an attorney also has a duty to advocate for his or her client. Here, PCR counsel abdicated that role insofar as he failed to find or recognize claims with possible merit—considering each of Williams's thirty-four claims as pro se and leaving Williams to champion them himself. Counsel further compounded the issue by actively arguing against his client—even his client's possibly viable claims.

With these facts, we cannot presume the outcome of Williams's PCR proceedings were reliable. Because Williams was denied meaningful representation in his PCR action and because PCR counsel's failure to present any of Williams's claims allowed them all to be decided without a record and without adversarial testing, we find PCR counsel committed structural error. *See Lado*, 804 N.W.2d at 252. We remand to the district court for a new hearing on

the merits of Williams's application for PCR, with new counsel.  *See id.* at 253;

*Gamble*, 723 N.W.2d at 446.

**REVERSED AND REMANDED.**