# IN THE COURT OF APPEALS OF IOWA

No. 17-1491
Filed February 6, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RASHAWN LEE JACKSON,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

        Rashawn Lee Jackson appeals his convictions for assault and assault causing bodily injury.  **AFFIRMED.**

        Brian S. Munnelly of Munnelly Law Office, Omaha, Nebraska, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

        Heard by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J,* but decided by Vogel, C.J., Doyle, J., and Danilson, S.J.  Vaitheswaran, J., takes no part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Chief Judge.**

Rashawn Jackson appeals his convictions and sentence after a jury found him guilty of assault and assault causing bodily injury in violation of Iowa Code sections 708.1, 708.2(6), and 708.2(2) (2017). Jackson argues (1) his trial attorney failed to provide effective assistance of counsel when she neglected to object to both the district court and the county prosecutor referring to the complaining witness as "the victim," (2) the racial composition of Jackson's jury pool violated his constitutional right to an impartial jury, and (3) the district court erred by overruling Jackson's motion for a directed verdict. We affirm.

## I.     Background Facts and Proceedings

"Viewing the trial evidence in the light most favorable to the jury's guilty [verdict]," *State v. Romer*, 832 N.W.2d 169, 172–73 (Iowa 2013), the jury could have found the following facts. On the morning of March 31, 2017, Zaikiah Soesbe was waitressing at a downtown Waterloo restaurant when Jackson, her boyfriend of approximately six months, entered the establishment. Jackson was extremely angry, as he recently learned Soesbe cheated on him, and an argument between the two ensued. Soesbe's manager interjected and demanded Jackson leave. The couple left the establishment, but continued their heated exchange outside. A security camera at the restaurant captured some of their interactions, including Jackson physically confronting Soesbe inside and outside the building. Eventually, the couple left together and drove to the apartment Soesbe shared with her two children and her mother. The argument continued upon arriving at the residence, and Soesbe suffered additional physical injuries as a result.

Soesbe called 911, but Jackson had fled by the time police arrived. While the responding officer interviewed Soesbe, Jackson returned to the residence. When asked, Soesbe lied and told the officer that Jackson was "Kyle," her "mom's friend." Soesbe initially expressed a desire to leave for the evening with her children and stay at a women's shelter, but she ultimately opted against it. Skeptical, the responding officer departed.

That evening, police were responding to a disorderly conduct call at an adjacent apartment unit when Soesbe flagged them down. Soesbe admitted she had lied to police earlier and gave a detailed account of her encounter with Jackson. Photographs were taken of the injuries Soesbe sustained and the damage Jackson had caused in the apartment.

On May 30, 2017, Jackson was charged with domestic abuse assault by knowingly impeding the flow of air or circulation of blood and domestic abuse assault causing bodily injury. *See* Iowa Code §§ 708.1, 708.2A(2)(b), (d). During the pretrial proceedings, Jackson's attorney suggested her client's constitutional rights may have been violated because of the underrepresentation of African-Americans in the jury pool. The jury manager was unavailable at that time to lay foundation for the presentation of necessary records, but those records were available to Jackson. The district court denied counsel's request for a new jury venire, but it encouraged the defense to revisit the issue before the conclusion of the jury selection should she see fit to do so.

No further objection was made, and the case proceeded to trial. After the close of the evidence, Jackson's attorney moved for a judgment of acquittal, which the district court denied. The jury found Jackson guilty of assault and assault

causing bodily injury. Jackson was subsequently sentenced to two terms of incarceration—thirty days and 365 days—to run concurrently. He now appeals.

## II. Standard of Review

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). A district court's denial of a request for a new jury panel is reviewed for abuse of discretion. *State v. Stidolph*, 263 N.W.2d 737, 738 (Iowa 1978). However, Jackson's constitutional claims regarding his right to an impartial jury are reviewed de novo. *See State v. Chidester*, 570 N.W.2d 78, 80 (Iowa 1997). Sufficiency-of-the-evidence claims are reviewed for correction of errors at law. *State v. McCullah*, 787 N.W.2d 90, 93 (Iowa 2010).

## III. Ineffective Assistance of Counsel

Jackson first argues that references to Soesbe as "the victim" by both the prosecutor and the district court judge violated his constitutional right to a fair trial. In addition, Jackson asserts his counsel was ineffective, by failing to object to these references during trial.

In order to prove ineffective assistance, a defendant must show that (1) counsel's performance was deficient and (2) prejudice resulted therefrom. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").

To support his claim of ineffective assistance, Jackson points to a recent Iowa Supreme Court case that involved a situation where a prosecutor referred to a complaining witness as "the victim," rather than the "alleged victim," multiple

times. *See State v. Plain*, 898 N.W.2d 801, 819–21 (Iowa 2017). In that case, our supreme court held the prosecutor's conduct did not quite rise to misconduct and found no prejudice occurred based on a series of factors including "the significance of the misconduct to the central issues in the case." Id. (citation omitted). Based on the reasoning in Plain, Jackson claims his attorney breached her duty by not objecting and prejudice resulted. That is, had an objection had been made, then the court would have declared a mistrial. See id.

We disagree that such an outcome was likely and therefore find that Jackson cannot establish prejudice. Our supreme court has provided factors to guide a court's determination of prosecutorial misconduct:

> We consider (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct.

*State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (citations omitted).

Weighing these factors, the two disputed references to Soesbe as "the victim" were isolated over the course of a two-day trial and can hardly be described as severe or pervasive. The district court itself appeared to have made its statement inadvertently in the midst of ruling on an unrelated evidentiary objection. The prosecutor's reference came when asking a police officer about the injuries Soesbe suffered. In addition, the physical evidence of Soesbe's injuries, along with the testimony of the witnesses and the restaurant's security camera video of Jackson's acts towards Soesbe, convince us that Jackson suffered no prejudice from the two short references to Soesbe as a victim. Finally, the district court expressly instructed the jury that statements made by the prosecution were not to

be considered as evidence. *See State v. Ondayog*, 722 N.W.2d 778, 785 n.2 (Iowa 2006) ("A jury is presumed to follow the instructions of the court."). As Jackson cannot establish prejudice, his ineffective-assistance-of-counsel claim must fail.

## IV. Jury Selection

Next, Jackson claims he was denied his right to a jury drawn from a fair cross-section of his community as guaranteed under the constitutions of both Iowa and the United States. Error was preserved to the extent that trial counsel raised the issue and the district court ruled on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, the State challenges preservation as to "any challenge alleging denial of a motion that would have been supported by evidence that Jackson was able to obtain but did not present." Important for our consideration are the relevant portions of the colloquy between Jackson's trial counsel and the district court:

> THE COURT: What is the issue with the makeup?
> [TRIAL COUNSEL]: So I believe that under the Sixth Amendment and under the Iowa Constitution that there is not a fair cross-section of black African-American—
> THE COURT: Have you looked at the jury questionnaires?
> [TRIAL COUNSEL]: Yes. There are two out of forty-five.
> THE COURT: And what number would you prefer to see?
> [TRIAL COUNSEL]: Your Honor, I believe that the population in Black Hawk County is considered to be eight percent.
> THE COURT: So you're saying what?
> [TRIAL COUNSEL]: That there is not a fair cross-section of the black population represented in today's jury pool. So I would request another panel to be provided. I did talk to the jury manager . . . yesterday, and she unfortunately is not here today to assist me in making a record, but I do have—*I did pull the records from the clerk's office for the last three months regarding race.*
>
> . . . .
>
> [TRIAL COUNSEL]: I would just like to note for the record that Mr. Jackson is an African-American, and so that's the reason for my challenge to the jury pool.

THE COURT: Do you want him present before discussion on that matter?

[TRIAL COUNSEL]: No, Your Honor.

THE COURT: Okay. Did you want to present any evidence on the issue?

[TRIAL COUNSEL]: If the State would allow me to present the evidence that I have. I don't have the jury manager here for foundation, and I did speak to the supervisor . . . over there, and none of them were comfortable with testifying about this issue. So that's, I think, a sufficient record at least for this case unless the court is interested in seeing some historical data. I don't know that three months' worth is sufficient, but I could provide what was given to me.

THE COURT: At this point I'm going to deny your request. However, if between now and the time a jury has been selected you want to revisit the issue, I'm certainly willing to do that, if you've got either some documents or some testimony that you want to present.

(Emphasis added.)

We agree with the State, Jackson could have pursued his claim with the records available to him, but he did not and this objection did not preserve the greater issue of systemic exclusion. However, even considering the arguments made, Jackson's circumstances are easily distinguishable from the situation in the previously referenced *Plain* case, on which he once again relies. *See* 898 N.W.2d at 827–28. *Plain* discussed the issue of what a fair cross-section requires, and it involved an attempt by the defendant to obtain records that were ultimately never made available to him despite multiple requests. *Id.* Here, Jackson had records and yet his counsel chose not to present them to the court when given the opportunity. Further, Jackson offered no evidence that the jury manager was unwilling or unavailable to testify at a later point in time. *Plain* hinged on the defendant's inability to access evidence of systemic exclusion, which was not alleged or pursued by Jackson. *See id.*

When the issue arose, Jackson bypassed the opportunity to make a prima facie showing of systemic exclusion of jurors and is now essentially asking for a "re-do." To grant his request would misconstrue the rationale underlying *Plain*, which was to afford defendants the actual opportunity to make a case. *Id.* at 828 ("[W]e conclude the constitutional fair cross-section purpose alone is sufficient to require access to the information necessary to prove a prima facie case."). Given his adequate access to information below and failure to use that information, it is not incumbent upon our court to extend the holding in *Plain* to grant him relief on appeal. *See State v. Storm*, 898 N.W.2d 140, 149 (Iowa 2017) ("We should not simply reflexively find in favor of any new right or interpretation asserted . . . ." (internal quotation marks and citation omitted)).

## V.      Sufficiency of Evidence

Lastly, Jackson argues insufficient evidence supported a finding of guilt by a rational trier of fact for domestic abuse assault "by knowingly impeding the normal breathing or circulation of the blood of another by applying pressure to the throat or neck of the other person or by obstructing the nose or mouth of the other person by knowingly impeding the normal breathing or circulation of the blood." Iowa Code § 708.2A(2)(d). Therefore, Jackson contends it was erroneous for the district court to deny his motion for directed verdict on that charge. However, as the State points out, this particular claim is simply moot. The jury only found Jackson guilty of the lesser included offense of assault, which, according to the jury instructions, did not require a determination that Jackson "knowingly impeded

the normal breathing or circulation of the blood of . . . Soesbe by applying pressure to the throat or neck."[1]  We therefore decline to address the issue.

## VI.  Conclusion

We conclude trial counsel was not ineffective because Jackson cannot establish prejudice.  Additionally, Jackson did not preserve error on his claim of a systematic exclustion or substantial underrepresentation in the jury pool when he was offered, but failed to use, pertinent records to attempt to establish his claim. Finally, Jackson's sufficiency claim is moot given the jury's determination of guilt on a lesser-included offense that did not include the disputed element.

**AFFIRMED.**

---

[1] Under Iowa Code section 708.1(2):

A person commits an assault when, without justification, the person does any of the following:

a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.