Grafton
No. 92-241

THE STATE OF NEW HAMPSHIRE

v.

CHRISTINE M. COONS

July 2, 1993

*Jeffrey R. Howard*, attorney general (*Jane E. Young*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Christine M. Coons, was convicted of possession of psilocybin mushrooms, RSA 318-B:2, I (1984). On appeal, she challenges the Superior Court's (*Hampsey*, J.) denial of her motion to suppress. We reverse.

On March 14, 1990, the Hanover Police Department obtained a warrant to search the residence and person of Zach Griefen, whom the police had reason to believe was cultivating marijuana plants. The next day, five police officers executed the warrant at Griefen's residence, which consisted of two rooms in the upstairs portion of a house. When the police arrived, they found three people, including the defendant and Griefen, and ordered them to sit on the bed while the search proceeded. The police immediately discovered twenty-five to thirty marijuana plants in a closet.

While the officers continued the search, the defendant asked to use the bathroom, which was located downstairs. The officers told her she could and that she would be accompanied to the bathroom door. As she walked to the door, the defendant picked up her handbag, a six- or eight-inch circular drawstring purse. Deputy Sheriff Douglas Dutille told the defendant he "needed to check that purse," believing that it "could very easily contain" a firearm. At the bottom of the purse Deputy Dutille found a small container of mushrooms, for which the defendant was arrested. They were psilocybin mushrooms, the source of an hallucinogenic drug, believed to have been used by pre-Colombian Aztecs for ritual purposes, which tends "to distort sensory perception and produce altered states of consciousness accompanied by intense emotional states." 22 ENCYCLOPEDIA AMERICANA 715 (1985). It is undoubtedly the presence of such properties in the fungi that results in their inclusion as proscribed matter under the Controlled Drug Act, RSA 318-B:1, XIII. For further discussion of such properties, see R. G. WASSON, THE WONDROUS MUSHROOM—MYCOLATRY IN MESOAMERICA (1980).

Prior to trial the defendant moved to suppress the drugs, arguing that they were discovered as a result of an illegal search. The trial court held that the officer acted reasonably to determine whether the purse contained a weapon, and denied the motion. The defendant relies upon both part I, article 19 of the State Constitution and the fourth amendment to the Federal Constitution. We analyze her argument under the State Constitution, referring to federal law only as an aid in our analysis. *See State v. Gravel*, 135 N.H. 172, 176, 601 A.2d 678, 680 (1991).

It has long been recognized that a police officer, for self-protection and safety, may conduct a patdown search for weapons of a suspect the officer reasonably believes or suspects may be armed. *See Terry v. Ohio*, 392 U.S. 1 (1968); *State v. Dodier*, 135 N.H. 134, 600 A.2d 913 (1991). The Supreme Court has made clear, however, that the so-called *Terry* doctrine "does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra v. Illinois*, 444 U.S. 85, 94 (1979).

Although Deputy Dutille believed that the defendant's purse "very easily" could have contained a handgun, the State concedes that the officer's belief was pure speculation. According to the officers, they had no reason to suspect the defendant of criminal activity, and she made no threatening gestures in their presence.

The State urges us to adopt the rule announced in *People v. Thurman*, 209 Cal. App. 3d 817, 823, 257 Cal. Rptr. 517, 520 (1989), that permits a routine patdown for weapons of any person present on private premises where a search warrant for drugs is being executed, whether or not the person displays a threatening posture. In light of the danger inherent in such situations, it is argued, a frisk is always a reasonable measure to protect the safety of the police. *See State v. Alamont*, 577 A.2d 665, 668 (R.I. 1990) (adopting *Thurman* rule). *But see State v. Grant*, 361 N.W.2d 243, 247 (N.D. 1985) (no authority to conduct routine weapons frisk at search warrant scene; instead, officers must have reasonable belief person armed and presently dangerous).

The Supreme Court has recently reiterated the principle that a *Terry* protective patdown for weapons requires, as a threshold matter, the officer's reasonable belief that the person to be frisked is "armed and presently dangerous to the officer or to others." *Minnesota v. Dickerson*, — U.S. —, —, 113 S. Ct. 2130, 2136 (1993) (quotation omitted). We need not decide whether to adopt the *Thurman* rule in this case because the search here exceeded the scope permitted by the rule and by the *Terry* standard. *People v. Thurman* held that officers executing a warrant for narcotics in a private residence have the right "to conduct a limited *Terry* pat-down search for weapons upon the occupants present while the search is in progress." *Thurman*, 209 Cal. App. 3d at 824, 257 Cal. Rptr. at 520. Here, the officer made no effort to pat down the purse but proceeded to empty it of its entire contents. This was no mere frisk, but a full-blown search. Nothing in the record indicates that the officer would

have been unable to detect the presence of a weapon by feeling the outside of the purse, an eight-inch-wide, nine-inch-high drawstring bag. In short, contrary to the State's claim, the officer did not confine his search strictly to what was minimally necessary to discover the presence of a weapon. We hold that this was unreasonable in violation of part I, article 19, and that the evidence should therefore have been suppressed.

*Reversed and remanded.*

All concurred.