Hillsborough-northern judicial district
No. 94-516

THE STATE OF NEW HAMPSHIRE

v.

JAMES ROACH

May 29, 1996

*Jeffrey R. Howard*, attorney general (*Jane E. Young*, assistant attorney general, on the brief and orally), for the State.

*Rebecca Thorne*, public defender, of Stratham, and *James E. Duggan*, chief appellate defender, of Concord (*Ms. Thorne* and *Mr. Duggan* on the brief, and *Albert E. Scherr* orally), for the defendant.

BROCK, C.J. The defendant, James Roach, appeals the Superior Court (*Barry*, J.) denial of his motion to suppress evidence seized as a result of an investigatory stop. We affirm.

At 3:55 a.m. on November 5, 1993, Manchester Police Officer Walter Feldhouse, while patrolling in his cruiser, saw the defendant poking his head and body out of an alley in an area of the city known for drug activity. The defendant continued this behavior for a minute, then walked to the street corner and returned to the alley. The defendant appeared nervous even from a distance.

When the defendant began to walk toward the corner a second time, the officer drove in his direction, and the defendant quickly reversed direction. Feldhouse caught up with the defendant and asked him if he was lost or looking for something. Concerned that the defendant might have a weapon, the officer told him to remove his hands from his jacket pockets. The defendant complied, and the officer noticed that a bulge remained in one of his pockets. The defendant put his hands back in his pockets, and the officer again had him remove them. Placing the defendant's hands on the police cruiser, the officer frisked him and found a Primatene Mist inhaler. The officer finished the pat-down and found no weapons. He did, however, notice a small bulge in the defendant's left pants pocket and asked if that was crack. The defendant said no, it was cocaine. The officer then removed a ten dollar bill containing cocaine from the defendant's pocket and arrested him for possession of cocaine.

The defendant moved, pursuant to part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution, to suppress the evidence, and the trial court denied the motion. On appeal, he argues that the trial court should have granted his motion because Officer Feldhouse did not articulate sufficient facts to justify the investigatory stop, and because the officer exceeded the scope of a permissible frisk for weapons under *Terry v. Ohio*, 392 U.S. 1 (1968). We will address the issue raised under the State Constitution independently, referring to federal cases only for their guidance in analyzing and deciding the State issue. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). Because we conclude that the State Constitution provides at least as much protection as the Federal Constitution in this area, we need not conduct a separate federal analysis. *State v. Koppel*, 127 N.H. 286, 289, 499 A.2d 977, 979–80 (1985).

As to pure questions of fact, we will uphold a trial court's findings unless unsupported by the record or found to be clearly erroneous. *State v. Santana*, 133 N.H. 798, 809, 586 A.2d 77, 84 (1991). Therefore, we will not second-guess the trial court's conclusions as

to what happened on the night of November 5, 1993, as outlined above. The application of the appropriate legal standard to those facts, however, is a question of law, which we review *de novo*. *State v. Grant-Chase*, 140 N.H. 264, 267, 665 A.2d 380, 382 (1995), *cert. denied*, 116 S. Ct. 1431 (1996).

In order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity. *State v. Kennison*, 134 N.H. 243, 246–47, 590 A.2d 1099, 1101 (1991); *see Terry*, 392 U.S. at 21. The officer's suspicion must have a particularized and objective basis in order to warrant that intrusion on protected privacy rights. *State v. Parker*, 127 N.H. 525, 529–30, 503 A.2d 809, 811–12 (1985). The foregoing factual basis must exist at the moment when the seizure occurred, *i.e.*, when "in view of all of the circumstances . . . a reasonable person would have believed that he was not free to leave." *State v. Wong*, 138 N.H. 56, 62, 635 A.2d 470, 474 (1993) (quotation omitted). The trial court found reasonable articulable suspicion to justify a seizure at the time the officer ordered the defendant to remove his hands from his pockets. *Cf. State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985) (seizure occurs if there has been a "show of authority" in officer's language or tone of voice). At the time of the seizure, Officer Feldhouse had at his disposal sufficient facts to justify the seizure.

The defendant's own behavior was suspicious: Officer Feldhouse saw him poke his head and body out of an alley, look around, walk up to the corner, return to the alley, and peer out some more, all the while appearing nervous even from a distance. The defendant also quickly turned away from the officer upon seeing him. The context for this furtive behavior was Manchester's "combat zone" at 3:55 a.m., facts which cast a more suspicious light on his own actions. *See Duhart v. United States*, 589 A.2d 895, 900 (D.C. 1991); *People v. Aldridge*, 674 P.2d 240, 242–43 (Cal. 1984) (en banc). In addition, during his encounter with Officer Feldhouse, the defendant acted evasive, nervous, confused, and uncooperative. Given all these facts, the trial court properly concluded that the officer possessed a reasonable articulable suspicion that the defendant had committed, was committing, or was about to commit a crime.

In upholding the stop in this case, we do not open the floodgates to all manner of intrusions on constitutionally protected rights to personal security. Our cases allowing investigatory stops based on reasonable suspicion are intended to allow a limited intrusion for a

limited purpose, and to permit a pat-down for weapons if there is a reasonable risk of danger to the officer while undertaking that limited investigation. *See Terry*, 392 U.S. at 19 (scope of search must be strictly tied to and justified by the circumstances which rendered its initiation permissible); *State v. Brodeur*, 126 N.H. 411, 415, 493 A.2d 1134, 1137 (1985). This doctrine should not be read as permitting the police simply to stop an individual to see what evidence can be developed. *See State v. Palamia*, 124 N.H. 333, 338, 470 A.2d 906, 909 (1983). Here, Officer Feldhouse initially suspected that the defendant may have been involved in a burglary; during his later questioning, however, he exhibited behavior associated with drug activities, and the "combat zone" was known to have a high incidence of drug-related crimes. The officer's inquiries were consistent with the specific suspicions to which the defendant's conduct gave rise.

 The defendant also argues that, even if the seizure was proper, the officer exceeded the proper scope of the investigatory stop. We disagree. Once an officer is justified in making an investigatory stop, he may also conduct a protective frisk if the officer justifiably believes the individual is "armed and presently dangerous." *State v. Coons*, 137 N.H. 365, 367, 627 A.2d 1064, 1065 (1993) (quotation omitted). The defendant is correct that the purpose of a protective frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). This is its "sole justification." *Terry*, 392 U.S. at 29. Therefore, the frisk must be strictly confined "to what [is] minimally necessary to discover the presence of a weapon." *Coons*, 137 N.H. at 368, 627 A.2d at 1065. Here, a visible bulge remained in the defendant's pocket after he removed his hands, and the defendant had to be told repeatedly to remove his hands from his pockets. In view of these facts and the defendant's suspicious behavior, the officer was justified in assuring himself that the defendant did not possess a weapon. As for the scope, Feldhouse's physical frisk was the minimum necessary to ascertain that the large bulge in the defendant's pocket was an inhaler and that the defendant was not otherwise armed. Having assured the safety of himself and others, he appropriately ceased his physical intrusion.

██ ██ But the officer then went beyond the pat-down, asking the defendant whether a smaller bulge was crack cocaine. This question cannot be justified as part of a protective frisk; the officer knew that bulge was not of the type to contain a weapon. But the question was within the proper scope of the officer's investigation into the

possibility of criminality, which was the purpose of the investigatory stop. During a detention, an officer may "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer*, 468 U.S. at 439. The scope of the stop "must be carefully tailored to its underlying justification" — to confirm or dispel the officer's particular suspicion — and "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Maya*, 126 N.H. 590, 595, 493 A.2d 1139, 1143 (1985). In this case, the officer met this standard. His question was appropriate to confirm or dispel his reasonable suspicion, based on the defendant's evasive and confused behavior in an area known for drugs at 3:55 a.m., that the defendant was involved in drug-related activity. The defendant's response then gave the officer probable cause to arrest him, *see* RSA 594:10 (1986), and to conduct a search incident to arrest. *See State v. Murray*, 135 N.H. 369, 374, 605 A.2d 676, 679–80 (1992).

*Affirmed.*

All concurred.