Hillsborough-northern judicial district
No. 94-578

### THE STATE OF NEW HAMPSHIRE

v.

### LEO VADNAIS

May 29, 1996

*Jeffrey R. Howard*, attorney general (*Jeffrey S. Cahill*, assistant attorney general, on the brief and orally), for the State.

*Michael K. Skibbie*, public defender, of Concord, on the brief and orally, for the defendant.

BROCK, C.J. The defendant, Leo Vadnais, appeals the Superior Court (*Barry*, J.) denial of his motion to suppress the fruits of what he claims was an unlawful seizure. On appeal, he argues that the police officer who stopped him did not have sufficient specific and articulable facts to warrant an investigatory stop under part I, article 19 of the New Hampshire Constitution and the fourth amendment to the United States Constitution. We affirm.

At 1:15 a.m. on May 21, 1993, Manchester Police Officers Robert Oxley and George Baker saw the defendant emerge from 184 Cedar Street. The officers knew that building as a place where drug sales occurred at "all hours of the night." Each officer had made a number of drug arrests in the building. Because of this fact, the officers were suspicious of anyone leaving that building at 1:15 a.m., so they monitored the defendant's movements.

After leaving the building, the defendant walked in the direction of the police cruiser. He looked at the cruiser, then reversed his direction and started walking in the opposite direction. Officer Baker drove the cruiser around the block, expecting to see the defendant walking toward him as the cruiser approached. Instead, however, the defendant was walking in the same direction he had been when he left the building. This time, he was walking "in a hurried fashion." The defendant entered the front passenger seat of a car that was parked in front of 162 Cedar Street. Two other people were in the car, the driver and a person in the back seat.

Officer Baker drove the cruiser behind the other car and illuminated it with the cruiser's exterior "takedown" lights. Once the vehicle was illuminated, the officers observed the defendant acting "very nervous," looking back and forth, and leaning toward the floor. Both officers left the cruiser and Officer Oxley asked the defendant to get out of the car. When he complied, the officer saw a small plastic bag on the floor in front of the defendant's seat. Officer Oxley recognized the white substance in the bag as cocaine. He arrested the defendant after a field test confirmed the presence of cocaine in the bag.

Before trial, the defendant moved to suppress all evidence gathered as a result of his seizure. The motion was denied, and the defendant was convicted after a jury trial. On appeal, he contends that the superior court erred in denying his motion to suppress because the officers did not articulate sufficient facts to justify the investigatory stop. We will address the issue raised under the State Constitution independently, referring to federal cases only for their guidance in analyzing and deciding the State issue. *See State v. Ball,* 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). Because we conclude that the State Constitution provides at least as much protection as the Federal Constitution in this area, we need not conduct a separate federal analysis. *State v. Koppel,* 127 N.H. 286, 289, 499 A.2d 977, 979–80 (1985).

■ In order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity. *State v. Kennison,* 134 N.H. 243, 246–47, 590 A.2d 1099, 1101 (1991); *see Terry v. Ohio,* 392 U.S. 1, 21 (1968). The officer's suspicion must have a particularized and objective basis in order to warrant that intrusion on protected privacy rights. *State v. Parker,* 127 N.H. 525, 529–30, 503 A.2d 809, 811–12 (1985). The suspect's conduct and other specific facts must create a "significant possibility of criminality"; the facts must lead somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime. *See* 4 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.4(b), at 149 (3d ed. 1996). The stop in the instant case meets this standard.

■ We first note that the trial court found that the parties had agreed that the officers made an investigatory stop when they parked their cruiser behind the car and illuminated its interior. Because the State acquiesced in this finding before the trial court, it has foregone the opportunity to challenge it on appeal. *See State v. Santana,* 133 N.H. 798, 808, 586 A.2d 77, 84 (1991). Accordingly, our sole task on appeal is to determine whether there was reasonable suspicion supporting the stop at that time.

■ Here, the officers observed the defendant emerge, at 1:15 a.m., from a building known as a center for drug sales. Although a person's mere presence in a high-crime area, even at a late hour, is not a sufficient basis, standing alone, to justify a brief investigatory detention, the hour and the character of the area may cast an

individual's own conduct in a more suspicious light. *See Duhart v. United States*, 589 A.2d 895, 900 (D.C. 1991); *People v. Aldridge*, 674 P.2d 240, 242–43 (Cal. 1984) (en banc). Upon seeing a police cruiser, the defendant reversed direction not once but twice, the second time at a hurried pace. He then entered a car that already had two other passengers in it, a fact which might give rise to an inference that the two others waited in the car while the defendant went inside the building for a brief period. This could give rise to the further inference that the defendant's visit to this "crack house" was drug-related.

■ Taken together, the defendant's *own behavior*, viewed in the light of the hour and the location, could have given the officers a particularized and objective basis for believing that the defendant himself was, or was about to be, engaged in criminal activity. *Kennison*, 134 N.H. at 246–47, 590 A.2d at 1101. Accordingly, the motion to suppress was properly denied.

*Affirmed.*

All concurred.