Sullivan
No. 95-857

### THE STATE OF NEW HAMPSHIRE

v.

### WILLIAM S. WEBBER

May 6, 1997

*Jeffrey R. Howard,* attorney general (*Jeffrey S. Cahill,* assistant attorney general, on the brief and orally), for the State.

*Kinghorn & Maynard, P.A.,* of Nashua (*Eric R. Wilson* and *Steven L. Maynard* on the brief, and *Mr. Wilson* orally), for the defendant.

BROCK, C.J. The defendant, William S. Webber, appeals his conviction for operating after being certified a habitual offender, RSA 262:23 (1993), following a jury-waived trial in the Superior

Court (*Galway*, J.). The sole issue on appeal is whether the Superior Court (*Morrill*, J.) erred in denying the defendant's motion to suppress evidence discovered when a State trooper searched his wallet after the defendant was stopped for a speeding violation. We reverse and remand.

On April 12, 1995, the defendant was pulled over for speeding on Interstate 89 by New Hampshire State Police Trooper Lawrence Holdsworth. After the defendant produced the registration for the vehicle but stated that he did not have his license with him, Trooper Holdsworth asked him to step out of the vehicle. Once outside, the defendant consented to a pat-down search for weapons. When asked his name and birth date, the defendant answered that his name was Glenn Webber but, according to Trooper Holdsworth, hesitated before stating his date of birth.

Having felt a wallet in the defendant's back pocket during the frisk, Trooper Holdsworth asked the defendant to look through it for identification. As Trooper Holdsworth watched, the defendant checked his wallet and stated that it contained only receipts and photographs. When the defendant began to close the wallet, Trooper Holdsworth asked to see a section of the wallet that had not been exposed. After the defendant opened that section of the wallet, Trooper Holdsworth removed a prescription card and asked the defendant why the card was in the name of W. S. Webber, when he had given his name as Glenn Webber. The defendant responded that the card belonged to his brother. At that point, Trooper Holdsworth took the wallet from the defendant and began searching its contents. When he removed and read a paper that was concealed inside, the defendant responded, "You got me."

The defendant then told Trooper Holdsworth that his real name was William S. Webber and that his driver's license was under suspension for driving while intoxicated. A motor vehicle record check conducted at the scene revealed that the defendant's license to operate had been revoked and that he was certified as a habitual offender.

Prior to trial, the defendant moved to suppress the evidence seized during the search of his wallet, as well as the inculpating statements made thereafter. The trial court denied the motion, ruling that the search of the defendant's wallet was permissible under both the plain view exception and an "identification search" exception to the warrant requirement. By offer of proof, the defendant was convicted of operating after being certified a habitual offender. This appeal followed.

The defendant argues that the trial court erred in denying his motion to suppress because the warrantless search of his wallet

violated part I, article 19 of the New Hampshire Constitution. We therefore base our decision on the State Constitution, looking to federal cases only as an aid to our analysis. *State v. Sterndale*, 139 N.H. 445, 447, 656 A.2d 409, 410 (1995).

■ We begin our inquiry by turning to our Constitution itself: "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. A warrantless search is *per se* unreasonable unless the State satisfies its burden of proving that the search is within "the narrow confines" of one of the judicially recognized exceptions to the warrant requirement. *Sterndale*, 139 N.H. at 447, 656 A.2d at 410.

At oral argument, the State conceded that the search of the defendant's wallet did not fall within any of the recognized exceptions to the warrant requirement. Nor did it argue that the defendant consented to the search. Rather, the State argued that the search was reasonable as either a narrow extension of the scope of a permissible investigatory stop, *see State v. Vadnais*, 141 N.H. 68, 70, 677 A.2d 155, 156 (1996); *see also Terry v. Ohio*, 392 U.S. 1, 20 (1968), or as a previously unrecognized "identification search" exception to the warrant requirement.

■ During a valid investigatory stop a police officer may "conduct a protective frisk if the officer justifiably believes the individual is armed and presently dangerous." *State v. Roach*, 141 N.H. 64, 67, 677 A.2d 157, 160 (1996) (quotation omitted). An investigatory search, however,

> must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.

*Terry v. Ohio*, 392 U.S. at 26 (citations omitted). In other words, to conform to the dictates of a lawful investigatory search, Trooper Holdsworth was required to "confine his search strictly to what was minimally necessary to discover the presence of a weapon." *State v. Coons*, 137 N.H. 365, 368, 627 A.2d 1064, 1065 (1993). Here, the State does not suggest that Trooper Holdsworth searched the defendant's wallet for any purpose other than to ascertain his identity. *See* 4 W. LAFAVE, SEARCH AND SEIZURE § 9.5(e), at 286 (3d ed. 1996) (clarifying that search inside container "may extend no

further than is necessary to determine whether there is a weapon inside").

■ Although the State urges us to validate the search as a "narrow extension" of the permissible scope of an investigatory stop, we decline to do so. Rather, we embrace the strictly circumscribed view of an investigatory stop expressed by the United States Supreme Court: "[During a valid investigatory stop,] the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

Having rejected the State's invitation to expand the scope of an investigatory stop, we turn to its request to adopt a novel "identification search" exception to the warrant requirement. *But cf. Sterndale*, 139 N.H. at 450, 656 A.2d at 412 (declining to adopt automobile exception under part I, article 19). The State supports dispensing with the warrant requirement in this case even though

> the warrant process interposes an orderly procedure involving judicial impartiality whereby a neutral and detached magistrate can make informed and deliberate determinations on the issue of probable cause. To leave such decisions to the police is to allow hurried actions by those engaged in the often competitive enterprise of ferreting out crime.

2 W. LAFAVE, SEARCH AND SEIZURE § 4.1(a), at 396-97 (3d ed. 1996) (quotations and footnotes omitted).

In support of its position, the State relies upon *State v. Flynn*, 285 N.W.2d 710 (Wis.), *cert. denied*, 449 U.S. 846 (1980). We need only examine the basis for that decision to reject its logic. In *Flynn*, the court determined that denying an officer the ability to at least ascertain the identity of an individual "could have a perplexing effect on law enforcement efforts." *Flynn*, 285 N.W.2d at 716. Under part I, article 19 of our constitution, however, the protection from unreasonable searches is not diminished by the desire, no matter how laudable, to aid law enforcement. In addition, the warrantless search in this case cannot be sanctioned as a necessary means to aid law enforcement; Trooper Holdsworth had lawful alternatives that he could have followed to ascertain the defendant's identity. *See* RSA 265:60, II (1993) (speed in excess of limit *prima facie* evidence that speed unlawful); RSA 265:2 (1993) (person exceeding lawful speed limit guilty of a violation); RSA 594:10, I(a) (1986) (officer may arrest without a warrant when person has committed violation in

officer's presence); *State v. Levesque*, 123 N.H. 52, 57, 455 A.2d 1045, 1048 (1983) (holding warrantless inventory search following lawful arrest proper).

Moreover, the *Flynn* court continued:

> Perhaps most significant is the fact that defendant could himself have substantially avoided the intrusion simply by producing the identification himself as his companion did. The officers then would have had no reason to reach into his pocket, remove the wallet and search it for identification. It was his unreasonable refusal to do so that led to the police conduct of which he now complains.

*Flynn*, 285 N.W.2d at 719. In other words, had the defendant merely consented to the search, he would have transformed the intrusion into a permissible one. We disagree, however, that refusal to consent is "unreasonable." Consent cannot be imposed upon an individual who chooses to exercise his constitutional right to be free from unreasonable searches. *Cf. State v. Hastings*, 137 N.H. 601, 606-07, 631 A.2d 526, 530 (1993) (noting that consent must be voluntary).

■ The State has failed to persuade us that the need for Trooper Holdsworth to discover the defendant's identity justifies nibbling away at the defendant's constitutional right to be free from unreasonable searches. *See, e.g., People v. Williams*, 234 N.W.2d 541, 544 (Mich. Ct. App. 1975) (no exception to warrant requirement shown to be applicable to search for identification). Because the search of the defendant's wallet was "manifestly exploratory in nature," it violated both the letter and the spirit of part I, article 19 of the New Hampshire Constitution. *State v. Dodier*, 135 N.H. 134, 140, 600 A.2d 913, 917 (1991).

*Reversed and remanded.*

All concurred.