**STATE of Minnesota, Respondent,**

v.

**Jon Quintin BAUMAN, Appellant.**

No. C5–98–224.

Court of Appeals of Minnesota.

Nov. 24, 1998.

Review Denied Jan. 27, 1999.

Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Raymond F. Schmitz, Olmsted County Attorney, Helen R. Brosnahan, Assistant County Attorney, Rochester, for respondent.

John M. Stuart, State Public Defender, Lyonel Norris, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and ANDERSON and THOREEN,* JJ.

## OPINION

LANSING, Judge.

The district court denied Jon Bauman's motion to suppress identification evidence obtained in a search of his vehicle. Following the omnibus ruling, the matter was submitted to the court pursuant to *State v. Lothenbach*, 296 N.W.2d 854 (1980).

## FACTS

The state cited Jon Bauman for speeding, driving after suspension, and providing false information to a police officer. At the omnibus hearing Bauman moved to suppress evidence of identification obtained in a search of his vehicle. The court denied the motion and, on a stipulated record, found Bauman guilty of the three offenses. Bauman appeals from the convictions, contending that the district court erred in its omnibus ruling that the search was constitutional.

The underlying facts are not in dispute. Trooper Gary Harmening stopped Jon Bauman for driving 72 miles per hour in a 55 mile-per-hour zone. When he asked Bauman for his driver's license, Bauman told him that he did not have it with him. Bauman told Harmening that his name was Mark George Bauman. He provided the month, day, and year of his birth and said the vehicle was owned by his brother. Harmening observed that he appeared somewhat nervous and had difficulty remembering his date of birth, his address, and his brother's address. He told Harmening he had trouble remembering numbers. When Bauman was unable to identify precisely where he was going, Harmening began to doubt the truth of his answers.

Harmening attempted to check the accuracy of the information through the radio operator. He found that Mark George Bauman was a licensed driver and that the car was registered to Jon Bauman. When he checked the license status of Jon Bauman, he found that Jon Bauman's license was suspended.

Increasingly suspicious about the accuracy of Bauman's self-identification, Harmening asked him how old he was. Bauman first said he was 36 and then quickly tried to correct himself by saying, "wait a minute, I guess I'm a little older than that." An age of 36 was not consistent with either Mark or Jon Bauman's birthdate. Harmening asked Bauman to step out of his vehicle and then proceeded to search for identification. He opened the driver's door, looked around the driver's area, and found a cloth briefcase with a wallet on top of it behind the driver's seat. The wallet contained a driver's license for Jon Quintin Bauman. When Harmening confronted Bauman with the driver's license, Bauman admitted that he was Jon Bauman, not Mark Bauman, and that Mark Bauman was his brother.

After further discussion with Bauman, Harmening contacted the Olmsted County Jail to determine if Bauman should be "booked and released" or given a citation. Harmening was told to exercise his discretion. He concluded that a formal arrest was unnecessary, issued Bauman a citation on the three offenses, and gave Bauman a ride to a neighboring town.

## ISSUE

Did the search of the vehicle for evidence of the driver's identity violate the Fourth Amendment of the United States Constitution?

## ANALYSIS

The Fourth Amendment to the United States Constitution and Article I, Section 10, of Minnesota's Constitution, in nearly parallel language, prohibit unreasonable searches and seizures. U.S. Const. Amend. IV; Minn. Const. art. I, § 10. In interpreting the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

clauses, the Minnesota Supreme Court has referred to the "greater protections of Article I, section 10, of the Minnesota Constitution." *In re Welfare of D.A.G.*, 484 N.W.2d 787, 789 (Minn.1992) (citing *O'Connor v. Johnson*, 287 N.W.2d 400, 405 (Minn.1979)). Bauman's appeal asserts error under both constitutions, but analyzes the issues only under the federal constitution and its interpretive authority. Accordingly, our analysis proceeds under the Fourth Amendment to the United States Constitution. *See Scruggs v. State*, 484 N.W.2d 21, 24 n. 1 (Minn.1992) (holding that an issue not addressed in the briefs is deemed waived on appeal). *See generally State v. Webber*, 141 N.H. 817, 694 A.2d 970, 973 (1997) (holding officer's seizure and search of defendant's wallet during valid traffic stop was unconstitutional under state constitution).

■ On undisputed facts, the district court's omnibus ruling on the suppression of evidence is a question of law. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). A determination of "probable cause as it relates to warrantless searches" is similarly subject to de novo review. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn.1997) (citing *Ornelas v. United States*, 517 U.S. 690, 698–99, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). Because Bauman does not dispute the validity of the initial stop for the speeding violation, our review is directed solely to the constitutional propriety of the search of his vehicle.

## I

■ The district court ruled that the officer could seize the wallet and its contents under the "plain view" exception to the Fourth Amendment's warrant requirement. Warrantless searches are per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The police can seize items in "plain view" without a warrant provided they have probable cause to believe that an item is contraband, stolen property, or evidence of crime. *State v. Zanter*, 535 N.W.2d 624, 632 (Minn.1995) (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)). But in

order for the plain view exception to apply, an officer must be in a position from which the officer can lawfully view the disputed object. *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971); *G.M.*, 560 N.W.2d at 693. The facts do not support a finding that Bauman's wallet, much less the driver's license, was in plain view from outside the car. Harmening testified to his actions before discovering the wallet:

> I asked [Bauman] to step out of his vehicle * * *. Then I looked in the vehicle * * *. [I] opened the driver's door, looked in and around the driver's area. I felt the easiest way to bring this stop to a conclusion was to find some sort of identification. In looking behind the driver's seat, I believe it was, there was some sort of cloth-type briefcase, I believe. And in looking on top of that, which I believe was open at the time, I did see a wallet.

Harmening's testimony is uncontroverted. Consequently, we conclude that the "plain view" exception does not make the evidence admissible.

## II

■ The state alternatively argues that the search of Bauman's vehicle was constitutionally permissible as a search incident to arrest. If an officer has probable cause to arrest a vehicle's driver, the officer can search the vehicle incident to the arrest of the driver. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *State v. Liljedahl*, 327 N.W.2d 27, 30 (Minn.1982). The exception for a search incident to arrest allows an officer to search the person and the area within the control of that person. *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973).

"The test of probable cause to arrest is whether the objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *G.M.*, 560 N.W.2d at 695 (citing *State v. Wynne*, 552 N.W.2d 218, 221 (Minn.1996)); *see State v. Sorenson*, 270 Minn. 186, 196, 134 N.W.2d 115, 123 (1965)

(officer has probable cause to arrest when "conditioned by his observations and information, and guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested").

At the time Harmening asked Bauman to step out of his car so he could search for identification, Harmening had accumulated significant information. He knew that the driver had given the name and date of birth of an individual with a valid driver's license, but the registered owner of the vehicle had a suspended license. He also knew that the driver said he did not have his license with him, could not say how old he was, was unsure of his address, was unsure of the purported car owner's address, and could not tell the officer where he was going. On these facts, Harmening had probable cause to arrest Bauman for providing false information to an officer. *See* Minn.Stat. § 609.506, subd. 2 (1996) (gross misdemeanor offense); *State v. White*, 489 N.W.2d 792, 795 (Minn.1992) (finding probable cause to search on similar facts).

The existence of probable cause to arrest for a custodial offense distinguishes Bauman's circumstances from stops in which a driver only fails to have a driver's license in possession. *See* Minn. R.Crim. P. 6.01(1), (2) (distinguishing between mandatory issuance of a citation for a misdemeanor and permissive issuance of a citation for gross misdemeanors and felonies); *State v. Varnado*, 582 N.W.2d 886, 892–93 (Minn.1998) (failure to possess driver's license not grounds for arrest or basis for search).

Determining that Harmening had probable cause to arrest Bauman before he searched the driver's area does not, however, fully resolve the search-incident issue. The supreme court in *White* recognized a search incident to an arrest can precede an arrest if probable cause to arrest exists at the time of the search and the formal arrest "follow[s] quickly on the heels of the challenged search." *White*, 489 N.W.2d at 795 n. 2 (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980)). But *White* also recognized that the Supreme Court has not yet determined whether police may subject a person to a search to the same degree permitted incident to arrest if there is in fact probable cause to arrest but the defendant is not subsequently arrested. *Id.* at 794–95 (citing 1 Wayne R. LaFave, *Search and Seizure* § 3.2(b), at 568–69 (2d ed.1987)); *see* 3 Wayne R. LaFave, *Search and Seizure* § 5.4(b), at 155–62 (3d ed.1996).

As the events unfolded, Harmening ultimately decided not to arrest Bauman. Instead, he issued him a citation for three offenses, including the gross misdemeanor of providing false information to a police officer. We do not view the issuance of the citations as precluding a constitutionally valid search. *See* Minn. R. Crim P. 6.01, subd. 4 (a "citation does not affect" an "officer's authority to conduct an otherwise lawful search"). But we recognize that the absence of a subsequent arrest extends our analysis beyond *White*'s holding that a contemporaneous incidental search may precede, rather than follow, a formal arrest. 489 N.W.2d at 795; *see also State v. Martin*, 253 N.W.2d 404, 406 (Minn.1977) (declining to decide whether an officer can conduct a search based on the issuance of a citation with no other independent justification). In analyzing whether this is an appropriate area in which to extend the permissible justification for a search, we look to the constitutional touchstone of reasonableness and to the purpose of incidental searches.

■ Courts have long recognized the constitutional reasonableness of searches subsequent to arrest. *See Robinson*, 414 U.S. at 230–32, 94 S.Ct. at 474–75 (discussing the history of allowing searches incident to arrest). A search serves to discover weapons, as well as items helpful in making an escape, to protect the officer, and preserve evidence. *Id.* The search "incident" to arrest has been extended to include a search "precedent" to arrest if the officer has probable cause to arrest at the time of the search. *Rawlings*, 448 U.S. at 110–11, 100 S.Ct. at 2564; *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973); *Varnado*, 582 N.W.2d at 892; *White*, 489 N.W.2d at 795 n. 2. At the same time, courts have recognized that allowing for a more fluid time frame

could result in impermissible bootstrapping. Probable cause to arrest must therefore exist before the search and cannot be based on the results of the search. *Smith v. Ohio,* 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990); *White,* 489 N.W.2d at 794 n. 1.

Judicial definition of probable cause elements and the timing of probable cause in relation to an arrest is an attempt to create a formula to analyze whether a search is reasonable. *Smith,* 494 U.S. at 543, 110 S.Ct. at 1290; *White,* 489 N.W.2d at 794 ("the issue is whether there was objective probable cause to arrest"). The reasonableness of allowing a search when there is probable cause to arrest but no arrest depends not only on current judicial formulas but also on an analysis of what benefit or protection a person would receive if an officer were required to arrest a person after conducting a search. *See Varnado,* 582 N.W.2d at 893 (suggesting public policy against subjecting minor traffic violator to full-scale search when not in possession of driver's license); *id.* at 893–94 (Gilbert, J., dissenting) (discussing public policy consideration of officer safety).

A full custodial arrest is a significant intrusion into a person's liberty. *Robinson,* 414 U.S. at 237, 94 S.Ct. at 494 (Powell, J., concurring). Consistent with a recognition of the degree of the intrusion, the court in *White* found the officer acted prudently by looking for identification papers although "he had probable cause then and there to arrest [the] defendant." 489 N.W.2d at 794–95; *see California v. Acevedo,* 500 U.S. 565, 583, 111 S.Ct. 1982, 1993, 114 L.Ed.2d 619 (1991) (Scalia, J., concurring) (asserting that most coherent interpretation of the Fourth Amendment relies on its "reasonableness" requirement). Absent a benefit or protection, it would be contrary to the Constitution's goal of protecting personal liberty to require an officer to deprive a person of liberty in a subsequent arrest. It would be ironic to interpret the Fourth Amendment in a manner that would prefer the state subject a person to two deprivations of liberty rather than one.

The principle of reasonableness that has guided the development of Fourth Amendment jurisprudence is consistent with allowing a search incident to an arrest when probable cause to arrest exists at the time of the search, even if a formal arrest does not follow. As the court observed in *White,* if an officer has probable cause to arrest before a search, and the search reveals that the officer's reasonable belief was erroneous, the search allows the person to avoid arrest. 489 N.W.2d at 795 n. 2. But even if the search does not establish innocence, the person suffers no greater intrusion from the search than if it were conducted after an arrest. *Id.* (quoting Justice Traynor in *People v. Simon,* 45 Cal.2d 645, 290 P.2d 531, 533 (1955)).

Allowing a search based on probable cause to arrest without a subsequent arrest does not change which searches are permissible under the Fourth Amendment. *See* LaFave, *supra* § 5.4(b), at 155 (although cases "generally assume that a 'substantially contemporaneous' arrest is essential," the reasoning of several authorities indicates that an arrest is not essential). Although termed a search "incident to arrest," when the search precedes an arrest, courts examine whether the officer had probable cause to arrest before the search. *Smith,* 494 U.S. at 543, 110 S.Ct. at 1290. Thus, a more descriptive name for a search preceding an arrest is "search incident to probable cause to arrest."

A further indication that the proper concept is "search incident to probable cause to arrest" can be observed in cases in which the formal arrest is not for the offense that provided the basis for the search. *Varnado,* 582 N.W.2d at 893 ("an arrest for a crime other than the one that provided the basis" for a search does not invalidate a search); *White,* 489 N.W.2d at 793 (arrest for possession of narcotics after search based on probable cause to arrest defendant for driving without a license). The focus is not on the arrest, but on whether probable cause to arrest exists before a search. *Smith,* 494 U.S. at 543, 110 S.Ct. at 1290 (the search incident to arrest exception "does *not* permit police to search any citizen without a warrant or probable cause so long as an arrest immediately follows") (emphasis added).

Although "incident to arrest" identifies a category of constitutionally permitted searches, neither the word "incident" nor "arrest" should be used preclusively to distort the underlying constitutional principles. *See* LaFave, *supra* § 5.4(b), at 158 (the "mere fact that for some reason it was not also deemed essential to make an immediate formal arrest of the defendant is no reason for treating a search of the person differently" than when probable cause and exigent circumstances exist). Because Harmening had probable cause to arrest Bauman for a custodial offense prior to the search of the car, Harmening's subsequent decision to not arrest him did not make the search unconstitutional.

### III

The state also raises, somewhat less clearly, an alternative basis for the search—that Harmening had probable cause to conduct a search given the exigent circumstances, and thus the search did not violate Bauman's constitutional rights. A reviewing court may uphold a search as valid on other grounds, even if not properly asserted by the parties. *Chambers v. Maroney*, 399 U.S. 42, 47, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970); *State v. Hannuksela*, 452 N.W.2d 668, 673 n. 7 (Minn.1990); *see G.M.*, 560 N.W.2d at 694–95 (affirming a search on grounds not argued by the parties).

An officer may search a vehicle under the automobile exception if the officer has probable cause to believe the search will produce evidence of a crime. *Acevedo*, 500 U.S. at 580–81, 111 S.Ct. at 1991; *State v. Search*, 472 N.W.2d 850, 852 (Minn.1991). The Supreme Court developed the automobile exception based on the exigent character of evidence in a vehicle and a person's reduced expectation of privacy in a vehicle. *California v. Carney*, 471 U.S. 386, 392–94, 105 S.Ct. 2066, 2070–71, 85 L.Ed.2d 406 (1985). Evidence located in a vehicle takes on an exigent character because "the vehicle is obviously readily mobile by the turn of an ignition key." *Id.* at 393, 105 S.Ct. at 2070. Unlike evidence located in a house or building, evidence in a vehicle may be moved, hidden, and even destroyed. Moreover, the

vehicle's driver and occupants may also disappear. Thus, "the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable." *Id.*

Consistent with the "automobile exception," the Supreme Court has found the characteristics of a vehicle result in a lower expectation of privacy in a vehicle. Vehicles operate on public roads, *id.*, where others can see the vehicle, its occupants, its contents, and where they are going. *Cardwell v. Lewis*, 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974). In addition, the state extensively regulates vehicles, further reducing a person's expectation of privacy in a vehicle. *New York v. Class*, 475 U.S. 106, 113, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986). These factors combine to limit a person's privacy expectation in their vehicle.

In searching Bauman's vehicle, Trooper Harmening believed Bauman's wallet and driver's license were in his car. He had probable cause to search for the driver's license as evidence that Bauman had provided false information to an officer. *See Chambers*, 399 U.S. at 50–51, 90 S.Ct. at 1981 ("the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable"). If Harmening had simply cited Bauman and allowed him to leave, it is unlikely the state would have later discovered that the driver had committed the offense of providing false information to an officer. As Harmening noted in his report, the physical description of Jon and Mark Bauman on their respective licenses was the same. Bauman, an "occupant" as described by *Carney*, would leave and would be unavailable for further investigation. *See Carney*, 471 U.S. at 393, 105 S.Ct. at 2070.

We recognize that a driver's license, which reveals a person's identity, does not in itself bear many of the characteristics of exigent evidence. Although a person can alter his or her driver's license, the person still exists and his or her identity may be discovered. On the other hand, if the driver's license is in an automobile, its location may give it exi-

gent characteristics. *Cf. Coolidge,* 403 U.S. at 460, 91 S.Ct. at 2035 (search invalid in part because items "were neither stolen nor contraband nor dangerous," but also because defendant was not in the vehicle or using the vehicle, nor did anyone else have access to alter the contents of the vehicle).

 Similarly, a person may also have a greater privacy expectation in his or her identity than in a vehicle. *See Arkansas v. Sanders,* 442 U.S. 753, 764–65, 99 S.Ct. 2586, 2593–94, 61 L.Ed.2d 235 (1979) (person has a heightened privacy expectation in personal luggage), *abrogated by Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619; *Wynne,* 552 N.W.2d at 222 (indicating the defendant had a privacy interest in her purse). Minnesota law, however, requires a person operating a vehicle to have a driver's license in possession while operating the vehicle. Minn.Stat. § 171.08 (1996). This requirement allows an officer to verify that a driver has a valid license to operate a vehicle. *See State v. Schinzing,* 342 N.W.2d 105, 109 (Minn.1983) ("Requesting a stopped driver to show his license is standard procedure in stop cases."). Weighing these considerations, it appears that on the facts of this case the automobile exception should extend to a search for the driver's license to confirm the driver's identity. *See Acevedo,* 500 U.S. at 572, 111 S.Ct. at 1987 (a person's privacy interest in closed containers in a vehicle yields "to the broad scope of an automobile search"). We therefore hold that Harmening's search for Bauman's driver's license was also valid under the automobile exception. *Cf. Varnado,* 582 N.W.2d at 889–92 (finding search invalid but not examining automobile exception or exigent circumstances).

## IV

 The state makes two final arguments relating to a theory of inevitable discovery of Bauman's identity. We note that the burden is on the state to show evidence would have been inevitably discovered, and that the state failed to present evidence to substantiate this at trial. *See State v. White,* 468 N.W.2d 556, 561 (Minn.App.1991) (discussing state's burden), *rev'd on other grounds,* 489 N.W.2d 792 (Minn.1992); *State v. Hatton,* 389 N.W.2d 229, 234 (Minn.App. 1986) (inevitable discovery exception is narrow exception), *review denied* (Minn. Aug. 13, 1986). In addition, the inevitable discovery argument, on its face, does not apply to these facts. For these reasons, and because we conclude Trooper Harmening's search was valid, we do not analyze the state's inevitable discovery arguments.

## DECISION

Trooper Harmening had probable cause to arrest Bauman. His search of Bauman's vehicle is valid as a search incident to arrest. Alternatively the search of Bauman's vehicle was justified by probable cause together with exigent circumstances.

**Affirmed.**