Hillsborough-southern judicial district
No. 98-712

THE STATE OF NEW HAMPSHIRE

v.

LEROY WALLACE

March 16, 2001

*Philip T. McLaughlin*, attorney general (*Michael A. Delaney*, attorney, on the brief and orally), for the State.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J., retired, specially assigned under RSA 490:3. The defendant, Leroy Wallace, appeals the denial by the Superior Court (*Brennan*, J.) of his motion to suppress. We affirm.

The defendant was convicted, after a jury trial, of class A felony burglary of the premises at 22 Wilder Street in Nashua, committed on or about January 27, 1997. *See* RSA 635:1 (1996). The State introduced as evidence at trial a set of inked finger and hand prints taken from the defendant. The State then introduced expert testimony that those prints matched latent prints taken from the burglary scene. The defendant challenges the introduction of his inked prints, arguing that they were the fruit of an unconstitutional investigatory stop.

The following facts, which are not challenged on appeal, were found by the trial court or appear in the record. At approximately 7:15 p.m. on February 1, 1997, Nashua Police Officer Sergio Hebra was on patrol investigating recent burglaries in the area between 2 Wilder Street and Sixth Street. Hebra saw the defendant, wearing dark clothing and a hooded sweatshirt, coming from the direction of 2 Sixth Street, a residence that had been burglarized two days earlier. As the defendant approached Hebra's "low profile" police car, Hebra saw him make a complete 360 degree turn. Hebra also observed the defendant look nervously from side to side. When the defendant reached Hebra's car, Hebra asked him some general questions, to which the defendant responded that he was waiting for a friend named John, with whom, he shortly thereafter explained, he planned to smoke marijuana. Hebra then got out of his car. After further questioning of the defendant and investigation of the area,

Hebra arrested the defendant for felony attempted burglary of the residence at 2 Sixth Street, although the charge was later changed to misdemeanor criminal trespass. The defendant's inked prints were taken by the Nashua police following his arrest.

The defendant contends that his detention by Officer Hebra at Sixth Street on February 1 violated both the State and Federal Constitutions, and therefore the inked prints taken at his arrest should have been suppressed in the trial for the 22 Wilder Street burglary. We address the defendant's claims under our State Constitution first. *See State v. Ball,* 124 N.H. 226, 231 (1983). Because the State Constitution is at least as protective in this area as the Federal Constitution, we need not engage in a separate federal analysis. *See State v. Vadnais,* 141 N.H. 68, 70 (1996). In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. *See State v. Roach,* 141 N.H. 64, 65 (1996). Our review of the trial court's legal conclusions, however, is *de novo. See id.* at 66.

██ "In order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *Id.* The factual basis supporting the stop must exist at the time the defendant is, for constitutional purposes, seized. *Id.* The trial court ruled that a seizure occurred when Officer Hebra got out of his cruiser. As neither party challenges that ruling on appeal, "our sole task on appeal is to determine whether there was reasonable suspicion supporting the stop at that time." *Vadnais,* 141 N.H. at 70.

The trial court found that the following facts supported the investigatory stop:

> Upon exiting his vehicle, Hebra had knowledge: (1) that there had been at least two robberies in the vicinity of the area [where] the defendant was walking; (2) that the defendant was walking from the exact direction of one of the Nashua residences that had been recently burglarized; (3) that the defendant was wearing dark clothing and a hooded sweatshirt; and (4) that the defendant made a 360 degree turn after noticing Hebra in his police vehicle.

The defendant argues that the innocuous details observed by Officer Hebra do not support a reasonable suspicion that the defendant was, had been, or was about to be engaged in criminal activity. The

defendant argues, for instance, that neither the location or time of day at which he was stopped, namely, a residential area during early evening hours, was inherently suspicious. His clothing, which was appropriate for the weather, was also not suspicious. His actions, he argues, were neither furtive nor suspicious, as he continued to approach Officer Hebra after making a complete 360 degree turn, and his looking from side to side while being questioned is consistent with looking for the person he said he was there to meet.

> To determine the sufficiency of the officer['s] suspicion, [we] must consider the facts [he] articulated, not in isolation, but in light of all the surrounding circumstances, keeping in mind, in particular, that a trained officer may make inferences and draw conclusions from conduct which may seem unremarkable to an untrained observer.

*State v. Pellicci*, 133 N.H. 523, 530 (1990) (quotation and citation omitted). Thus, while the location and time of the defendant's detention may seem innocuous in isolation, Officer Hebra testified that he saw the defendant coming from the direction of a house from which $500 in cash had been stolen two days before, and that "[i]t's quite common that when a burglary is committed and a substantial amount of cash is taken, people come back to take more money." He also testified that the recent burglaries had occurred in the "after dark hours," which, in winter could come "fairly quick." In fact, he testified that the burglary at 22 Wilder Street occurred between 7:00 and 8:00 p.m., and that it was 7:15 p.m. when he saw the defendant on Sixth Street.

Similarly, while the defendant's dark clothing and hooded sweatshirt may not be inherently suspicious, they were consistent with what Officer Hebra expected a burglar would wear. He testified that such clothing "would be something that we would look for in instances like this, where, you know, someone is breaking into homes . . . they're not gonna wear, you know, a white jacket or, you know, brightly colored clothing. It's gonna be as subdued as possible." We also conclude that while the defendant's looking from side to side might have been consistent with keeping a watch for his friend John, it is also consistent with nervous behavior, particularly when viewed in conjunction with the defendant's 360 degree turn upon seeing Officer Hebra's cruiser. Thus, we hold that the investigatory stop of the defendant was based on specific, articulable facts, and that "[a]lthough some of these activities may appear

innocent in isolation, when taken together and considered in light of the reasonable inferences that officers who are experienced in investigating [burglaries] may draw," they support a reasonable suspicion that the defendant was, had been, or was about to commit a crime. *Pellicci*, 133 N.H. at 530.

The defendant contends, however, that the stop was nevertheless impermissible because Officer Hebra testified that he in fact did not have any articulable suspicion about the defendant. When asked whether, at the point he stopped the defendant, he suspected him of having committed the burglary two nights earlier, Officer Hebra testified: "No. I haven't suspected anything other than this was an activity that I wanted to investigate. I wanted to find out what was going on." The defendant argues that this is an insufficient ground on which to base an investigatory stop. *See Roach*, 141 N.H. at 67 (Investigatory stop "doctrine should not be read as permitting the police simply to stop an individual to see what evidence can be developed.").

■ The defendant, however, takes Officer Hebra's testimony out of context. Officer Hebra testified that he was investigating recent burglaries in the area, that he went to the location of the burglary two days previously because he knew that burglars who take cash often return to the same place to take more, and that he saw the defendant coming right from a previously burglarized house wearing dark clothing and a hooded sweatshirt. Officer Hebra's testimony implies that he found the defendant's behavior suspicious because it was consistent with that of a burglar. Thus, the facts known to Officer Hebra "[led] somewhere specific, not just to a general sense that this is probably a bad person who may have committed some kind of crime." *Vadnais*, 141 N.H. at 70 (quotation omitted).

■ Moreover, the defendant's contention that the officer must subjectively suspect the defendant of a crime is mistaken. We have adopted an objective test for determining whether a specific and articulable basis for the requisite suspicion existed at the time of the stop. *See State v. McBreairty*, 142 N.H. 12, 15 (1997). "[T]he fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quotation and brackets omitted). We therefore reject the defendant's argument

and, having found objective justification for the investigatory stop, we affirm the defendant's conviction.

*Affirmed.*

BROCK, C.J., and BRODERICK, J., concurred.