Grafton
No. 2003-544

THE STATE OF NEW HAMPSHIRE

v.

DEBORAH MOORE

Argued: June 9, 2004
Opinion Issued: July 23, 2004

*Peter W. Heed*, attorney general (*Laura E. B. Lombardi*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

GALWAY, J. The defendant, Deborah Moore, was convicted of felony possession of hydromorphone and misdemeanor possession of marijuana. *See* RSA 318-B:2; :26, II(a) (Supp. 2003). She appeals an order of the Superior Court (*Vaughan*, J.) denying her motion to suppress evidence seized as a result of her arrest. We affirm.

*I. Facts*

The record of the suppression hearing supports the following facts. On December 11, 2002, State Trooper Matthew Koehler was on patrol in Dalton. At approximately 4:30 p.m., he saw a pickup truck with a defective headlight, and stopped it. The truck was driven by Linda Tellier, and the defendant was her only passenger.

While questioning Tellier about her license and registration, the trooper noticed an odor of alcohol coming from the truck. He asked Tellier if she had been drinking, and she acknowledged that she had consumed one beer. He also asked if there was any beer in the vehicle, and she replied that there was no alcohol, and that her passenger had not been drinking. He then requested that she get out of the truck and submit to a field sobriety test. She complied and passed the test.

Because the trooper believed that Tellier was not impaired and that she did not emit an odor of alcohol when she was away from the truck, he became concerned that the vehicle might contain an open container of alcohol in violation of the law. *See* RSA 265:81, III (1993). Accordingly, he asked Tellier if there were any open containers in the truck, which she denied. She, however, declined Trooper Koehler's request to search the vehicle for such containers.

Still lacking an explanation for the odor of alcohol, the trooper asked the defendant to get out of the truck so he could determine whether she was the source of the odor. When the defendant stepped out of the truck, the trooper noticed a slightly crumpled beer can between the passenger seat and the passenger door, "dirty liquid" on the floorboards of the passenger compartment, and what looked like spilled liquid on the front of the defendant's pants. He asked the defendant if she had been drinking beer from the can, and she replied that she had been drinking earlier, but denied drinking in the truck. The trooper then searched the vehicle and picked up the opened beer can, noting that it was cold and that there were beer suds along the rim of the can.

The defendant was arrested for violating the open container law. *See* RSA 265:81, III. Following her arrest, the defendant was found to be in possession of drugs, which gave rise to the charges prosecuted in this case.

Prior to trial, the defendant filed a motion to suppress the drugs found on her person pursuant to Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. She argued: (1) that Trooper Koehler illegally seized her when he detained her for a period of time longer than necessary; (2) that his order to exit the truck was a pretext; and (3) that the New Hampshire Constitution requires an officer to have an articulable basis predicated upon safety considerations before ordering a passenger to exit, and that the trooper had no such articulable basis. The trial court denied the motion, ruling that the trooper had a "reasonable, articulable suspicion that there was an open container in the vehicle." This appeal followed.

The defendant argues that the trooper "ordered her out of the truck in which she was a passenger" without any "articulable, case-specific reason to do so." Because the defendant relies solely upon the State Constitution,

we cite federal authority for guidance only, *State v. Ball*, 124 N.H. 226, 233 (1983). In reviewing the trial court's ruling, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Wallace*, 146 N.H. 146, 148 (2001).

## *II. Analysis*

The validity of the initial stop for a defective headlight is not challenged on appeal. Rather, the sole issue before us is whether the trooper had reasonable, articulable suspicion to justify his request to the defendant to get out of the truck. *See Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). We conclude that he did.

During a stop, an officer may ask a detainee a moderate number of questions to determine the detainee's identity and to try to obtain information confirming or dispelling the officer's suspicions. *State v. Szczerbiak*, 148 N.H. 352, 355 (2002). Absent an independent basis for having a reasonable, articulable suspicion, however, an officer cannot expand the scope of the initial stop. *Cf. State v. McKinnon-Andrews*, 151 N.H. 19, 25 (2004) (recognizing that the purpose of *Terry*'s scope requirement is to prevent law enforcement officials from fundamentally altering the nature of the stop by converting it into a general inquisition about past, present and future wrongdoing, absent an independent basis for reasonable suspicion or probable cause). These parameters impose a standard of "reasonableness" upon the exercise of discretion by government officials in order to safeguard the privacy and security of individuals against arbitrary invasions. *Id.* at 22.

Here, the defendant argues that Trooper Koehler lacked any "articulable" reason to ask her to exit the truck. Although she cites the officer's testimony that "the reason [he] wanted her out of the vehicle [was] to see if the odor of alcohol was on her," she argues that his "bare open-container suspicion did not give him any legitimate reason to order her out of the car."

To determine the sufficiency of the officer's suspicion, we must consider the facts he articulated in light of all of the surrounding circumstances. *See State v. Turmel*, 150 N.H. 377, 381 (2003). We do not, however, consider each fact in isolation. *Id.*

Here, we conclude that the following case-specific, objective facts support a finding that the officer had reasonable, articulable suspicion that the defendant had been, was, or was about to engage in criminal activity sufficient to justify asking the defendant to get out of the vehicle. *See id.* at 380. First, when an officer determines that a driver is not the source of an odor of alcohol emanating from the vehicle, it is reasonable for the officer

to suspect that the odor might be coming from some other source—such as a passenger or an open container within the vehicle—and that further investigation is necessary. This is particularly true in light of the driver's insistence that there was no alcohol in the vehicle, that there were no open containers in the vehicle, and that the passenger had not been drinking. Second, an officer also could reasonably conclude that in order to determine the source of the odor, it would be necessary to remove the passenger from the vehicle. And finally, an officer could reasonably infer that an opened beer can in the vehicle and liquid on the vehicle's floor indicates that the open container law has been violated. The fact that there were other actions that a reasonable officer might have taken does not automatically render the actions that were taken unreasonable.

We hold that these objective facts were sufficient to create an independent basis for having reasonable, articulable suspicion that the defendant had been, was, or was about to engage in criminal activity and thus allow an expansion of the scope of the initial stop. Thus, these facts justified the officer's request that the defendant exit the vehicle without violating her State constitutional rights.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.